ST. LOUIS TRUST COMPANY, Executor of McDONALD, v. BAMBRICK, Appellant.

### Division Two, May 23, 1899.

1. **Obstruction To Ancient Water Way**: PLEADING: SPECIFYING ELEMENTS OF DAMAGE. In an action to plaintiff's realty, resulting from the damming up of a stream and thereby causing it to overflow plaintiff's lots and quarry, a petition containing other necessary allegations is not defective because it does not charge the permanent injury to be the difference in the value of the land just prior and just subsequent to the overflow, nor because it does not charge the temporary injury to be the rental value from the date of the overflow to the commencement of the suit. The measure of damages is not a necessary averment, but is a matter to be regulated by instructions.

2. ————: ————: INSTRUCTION: MEASURE OF DAMAGES. Where real property has been injured by the damming up of a stream, so as to overflow the land, the measure of damages is the difference between its market value immediately before the injury occurred, and its like value after the injury is complete; and it is not necessary to allege in the petition what the values were at these different periods, but if the petition charges the entire damage to be one gross sum the measure of the damage is a matter to be regulated by instruction to the jury.

St. Louis Trust Co. v. Bambrick.

3. ———: INSTRUCTION: MEASURE OF DAMAGES: LACK OF EVIDENCE. Where there is no evidence as to the value of a quarry either just before the injury or after it was complete, the action being to recover damages for the obstruction of a stream which flowed through the quarry, it is error to give an instruction telling the jury that the measure of damages is the value of the realty just before and just after the injury.

*Appeal from St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

REVERSED AND REMANDED.

T. J. ROWE for appellant.

(1) The petition herein fails to state facts sufficient to constitute a cause of action. The petition does not allege the value of the land before the overflow, and the value of the land after the overflow; or the fair rental value of the land from the time when the injury commenced to the date of suit. Gould on Waters, sec. 211; Paddock v. Somes, 51 Mo. App. 321. (2) The court at the instance and request of the plaintiff gave an illegal and improper instruction. (3) The instruction given by the court on the measure of damages is erroneous, and was not warranted by any evidence in the case. Schaub v. Railroad, 106 Mo. 74; Gass v. Railroad, 50 Mo. App. 614; Pinney v. Berry, 61 Mo. 360; Smith v. Railroad, 98 Mo. 20. (4) The instructions offered by defendant were legal and proper instructions and should have been given. (5) The damages assessed by the jury are excessive, and are not supported by the evidence.

. WILLIAM B. THOMPSON and FORD W. THOMPSON for respondent.

(1) Where water has a definite source, as a spring, and takes a definite channel, it is a water course, and the size and length of the stream are immaterial; it is a water course

St. Louis Trust Co. v. Bambrick.

from its source, and if lost in a swamp or lake and for a time spread over a meadow it is still a water course if it emerges therefrom and can be identified as the same stream. Case v. Hoffman, 84 Wis. 438. (2) Where land is wrongfully overflowed, so as to deprive the owner of its use, the true measure of damages is its fair rental value. Phinizy v. Augusta, 47 Ga. 260. The measure of damages for the illegal and wrongful overflow of land is the actual damages coming to the lands by such wrongful and illegal overflow. South Bend v. Paxton, 67 Ind. 228; Chicago v. Heuerbein, 58 Ill. 594. It is not necessary to show any actual damage. Woodman v. Tufts, 9 N. H. 88; Ellington v. Bennett, 59 Ga. 286. (3) The measure of damages is the actual loss sustained during the continuance of the injury, measured in the ordinary case by the rental value of the land. 3 Sedgwick on Damages, sec. 942; Pinney v. Berry, 61 Mo. 359. In a proper case this will be the amount of profits lost. Simmons v. Browy, 5 R. I. 299. So in an action for overflowing his land by a mill-dam, the plaintiff is not confined to the net gain to be derived from the land in its actual condition. The jury should consider the capabilities of the land for more profitable use, even in a changed condition. Ellington v. Bennett, 59 Ga. 286; Railroad v. Berry, 78 Ga. 744; Sullens v. Railroad, 74 Ia. 659; Railroad v. Hekley, 62 Tex. 593; Willey v. Hunter, 57 Vt. 479; Schuylkill Nav. Co. v. Farr, 4 W. & S. 362; Chicago v. Heuerbein, 58 Ill. 594; Railroad v. Ward, 16 Ill. 522. (4) One can not collect surface water into artificial channels and cast it upon the land of his neighbor. It makes no difference that some of the water so collected consists of spring water or drainage or sewerage water. Paddock v. Somes, 102 Mo. 227; McIntosh v. Rankin, 134 Mo. 340; Howard v. Railroad, 130 Mo. 652; Benson v. Railroad, 78 Mo. 505; Rychlicki v. St. Louis, 98 Mo. 502; Hudson v. Burk, 78 Mo. 504; Byrne v. Railroad, 47 Mo. App. 389; George v. Railroad, 40 Mo. App. 433;

Wallace v. Railroad, 47 Mo. App. 496; Young v. City of Kansas, 27 Mo. App. 101. (5) When the injury inflicted is of a permanent character, and goes to the entire value of the estate, the whole injury is suffered at once, and a recovery should be had therefor in a single suit. Markt v. Davis, 46 Mo. App. 272; Pinney v. Berry, 61 Mo. 359; Dickson v. Railroad, 71 Mo. 575; Autenreith v. Railroad, 36 Mo. App. 255; Van Hoozier v. Railroad, 70 Mo. 145. Damages for permanent and temporary nuisance may be recovered in one action, but should not be stated in one count; but if joined in one count and no motion is filed in the trial court to compel plaintiff to elect on which he would proceed, the objection must be deemed waived. Wallace v. Railroad, 47 Mo. App. 491; Babb v. Curators of State University, 40 Mo. App. 173.

BURGESS, J.—This suit was commenced by Anna F. McDonald for damages to a small tract of land, and a stone quarry thereon, of which she was the owner, by defendant's filling up with dirt on his land the channel of a stream of water which flows through her land, and also through defendant's, thereby backing the water up and flooding said quarry and land.

The plaintiff recovered a verdict in the sum of $3,000, and after an unsuccessful motion to set the same aside defendant appeals.

Since the case has been pending in this court, Anna F. McDonald has deceased, and the cause revived in the name of the plaintiff as her executor.

After alleging ownership in plaintiff of the land and the quarry, and the nature and character of the stream of water thereon, its source, channel and course, the petition proceeds as follows: "Plaintiff further states that the said defendant has excavated the ground above the said channel, at a point upon and where it passes under his said premises, and has within sixty days last past filled said channel with dirt, and partially

obstructed the flow of the said waters through the same, so that the waters from said spring and other waters running through said channel have set back and accumulated to such an extent as to overflow the premises of plaintiff herein, and the same has overflowed the premises of plaintiff herein so that where plaintiff's premises are excavated and used for a quarry, the same is no longer of any use to the plaintiff for quarry purposes or for any other purposes, and the premises of plaintiff herein, by the act of said defendant, has been filled with water, so that the same is now some twenty to forty feet deep, and the water so accumulated by reason of the overflow is stagnant and the same has injured and destroyed plaintiff's premises. Plaintiff says that said defendant has wholly obstructed and dammed up the said water course and stream, so that the water accumulated on plaintiff's premises can not flow into the Marie Castor creek from the stream aforesaid, and the said water has become foul, polluted and poisonous, and has destroyed the use of the said quarry of plaintiff herein and also the land owned by plaintiff herein."

It then concludes with a prayer for judgment for twenty thousand dollars damages.

The answer is a general denial.

The facts as disclosed by the record are about as follow:

Mrs. McDonald was at the time of the grievance complained of, and at the commencement of this suit, the owner and in possession of lot fifty-two of suburb Cote Brilliante in the city of St. Louis, Missouri, as described in the petition, and defendant was the owner of and in possession of lot forty-seven and part of lot forty-eight of suburb Cote Brilliante as described in the petition. At said time Giles F. Filley was the owner of and in possession of lots fifty-six, fifty-seven, fifty-eight and part of fifty-nine as described in the petition. Prior to 1869 a stone quarry had been opened in the northeastern part of plaintiff's lot, and the same had

been worked periodically from that time until about July, 1888, but from July 1, 1888, up to date of the trial it had never been operated. Plaintiff's lot fifty-two contained about five and one-half acres and the portion used as a quarry was about one-half of an acre. All the surface water of said lots fifty-two, fifty-six, fifty-seven, fifty-eight and fifty-nine and the property of Norwood Park Company drained into the quarry of plaintiff, and prior to 1893 the quarry frequently filled with water after heavy rains. In 1893 the defendant operated a stone quarry in the northern part of said lots forty-seven and forty-eight, and the Marie Castor creek flowed eastwardly along the northern line of said lots. The water from a spring on the land of Giles F. Filley flowed north-wardly in a fixed direction across the land of a corporation known as Norwood Park and into and across plaintiff's land to a place in the stone quarry on plaintiff's land about 700 feet from its source, and there the water became submerged in a crevice in the rock in the bottom of the plaintiff's quarry. There was evidence tending to prove that the water, after it went into the crevice in the rock in plaintiff's quarry, came out again in the quarry of defendant about 1,000 feet from the place where it went underground and became submerged on defendant's land. The evidence for plaintiff tended to prove that the water from said spring had so flowed from time immemorial until, about sixty days before June 24, 1893, the defendant excavated the ground on his tract of land and found the channel through which said water flowed, and partially stopped the flow so that the abandoned quarry on plaintiff's land filled up with water, and was full of water at the time this suit was commenced. The evidence for defendant tended to prove that the quarry on plaintiff's land had filled with water from 1889.

At the instance of plaintiff the court instructed the jury as follows: "A.    If the jury believe from the evidence that from time immemorial a stream or water course known

as the Marie Castor creek, having a fixed, worn and well defined channel, has run and still runs across the property owned by defendant herein, and that the waters of said creek finally drain or flow into the Mississippi river; and that from time immemorial a large spring of water of great volume has risen and still rises in a tract of land owned by Giles F. Filley, adjoining plaintiff's land, and that said spring of water has flowed and still flows across the land owned by said Filley and across other land into the said tract of land belonging to plaintiff, and from thence into and through a well defined and fixed underground channel under and through St. Louis avenue and into the premises of defendant; that said water flowed through the said channel into the channel of said Marie Castor creek; and that the flow from said spring has been and still is continuous and of great volume, and that the same has worn and established for itself a well defined and known channel and bed for the entire distance from the point where the said spring rises to where it flowed into the said Marie Castor creek; and that said channel and stream has also carried off and conveyed all surface water and other waters flowing into the same from other sources; and if the jury further find that the said defendant has excavated the ground above the said channel at a point upon and where it passes under his said premises, and has thereby or in any manner interfered with and obstructed the flow of the said water through the same, so that the waters from said spring and other waters running through said channel have been caused to, and have set back and accumulated to such an extent as to overflow the premises of plaintiff, and that by reason thereof the same have overflown the premises of plaintiff, and thereby caused the quarry on plaintiff's premises to become, and the same has become, or partially, filled with water and if the jury further find from the evidence that the plaintiff's said quarry has been injured and the beneficial use

thereof destroyed by said act of defendant in obstructing the said water course and channel (if you believe from the evidence that defendant did so obstruct it), then the plaintiff is entitled to recover, and you should so find by your verdict."

The court on its own motion gave the following instructions:

"The jury are instructed that if they find for the plaintiff under instruction numbered A, and further find from the evidence in this case that plaintiff's quarry has been permanently injured by the obstruction of the water course in controversy, then the measure of plaintiff's damages will be the difference between the value of plaintiff's quarry immediately before the obstruction of the water course and immediately afterwards, not exceeding the amount claimed in the petition, and the jury are further instructed that in determining the value of plaintiff's quarry they are at liberty to consider the rental value thereof and all other facts and circumstances in said case as appear by the evidence."

To which said action of the court in giving said instructions, defendant then and there at the time duly excepted.

The court at the instance of defendant gave the following instructions:

"The court instructs the jury that plaintiff can not recover in this action unless they believe from the evidence that there was at the time mentioned in plaintiff's petition an underground flow of water so well defined as to be a continuous stream, and that defendant obstructed the channel of said underground stream of water, and thereby caused the water from said well defined underground flow of water to back up on plaintiff's land and thereby injured the plaintiff.

"The jurors are instructed that water percolating through the ground beneath the surface either without a definite channel, or in courses which are unknown and

unascertainable, belongs to the realty in which it is found; and if the jurors believe from the evidence that the water found on the premises of defendant Bambrick percolates through the ground beneath the surface either without a definite channel or in a course which is unknown and unascertainable then the plaintiff can not recover in this action; although they may further believe from the evidence that said water so percolating through the ground comes from the spring on land of Giles F. Filley mentioned in plaintiff's petition."

The defendant offered the following instructions, which were refused:

"The court declares the law to be that under the pleadings and proof plaintiff can not recover in this action.

"The court instructs the jurors that although they may believe from the evidence that the water from the spring on Filley's land, and the water from the quarry on plaintiff's land, percolated through the rocks under defendant's land and came out at or near the Castor creek, yet that fact would not constitute such water a stream and plaintiff could not recover in this action.

"The court instructs the jurors that a stream is a current of water, and unless you believe from the evidence that at the time mentioned in the petition, a well defined current of water was running from the surface of plaintiff's land under defendant's land then the plaintiff can not recover in this action.

"The court instructs the jury that if they believe from the evidence that the quarry on plaintiff's land had not been used by the plaintiff as a quarry and that plaintiff did not intend to use the same as a quarry, but intended to fill up the same, then the plaintiff can not recover any damages by reason of her being unable to use said quarry."

To which said action of the court in refusing said instructions defendant then and there at the time duly excepted.

The first point presented for consideration on this appeal is with respect to the sufficiency of the petition, which defendant contends fails to state a cause of action for permanent injury to the land because it does not allege its value just before the overflow and its value thereafter, and fails to state a cause of action for temporary injury because it does not allege the rental value of the land from the date of the overflow to the commencement of the suit. We are of opinion that no such allegations were necessary. The petition in effect alleges ownership and possession of the land by Mrs. McDonald at the time of the injury complained of, and at the time of the commencement of the suit; that the injury was caused by defendant by filling up a natural water course, which flowed through her land, then through defendant's land, at a point on his land, thereby causing the water to flow back on plaintiff's land and to cover part of the same that had been used for a quarry, etc., to plaintiff's damage in the sum of $20,000, for which judgment is asked; and contains all necessary averments in an action of this character.

It is not necessary that it should allege what the measure of damages was, as that was a matter to be regulated by the court in its instructions to the jury.

The instruction with respect to the measure of damages which was given by the court of its own motion is criticised upon the ground that there is no allegation in the petition, and no evidence upon which to bottom it.

As to the first proposition it is only necessary to say that the petition is, as we have already said, sufficient. This instruction is based upon the theory that the injury to the quarry is permanent, and correctly presents the measure of damages, if there was evidence to justify it. Where real property is permanently injured by the wrongful act of another the measure of damages is the difference between its market value immediately before the injury occurred,

and. the like value after the injury is complete.    [Martin v. Railroad, 47 Mo. App. 452; Sheehy v. Street R'y, 94 Mo. 574.]

But there was no evidence as to the value of the quarry either before or after the injury.    The nearest approach to it was the testimony of John B. O'Meara, who testified in substance that he had been actively in business as a quarry operator and in the construction business for about fifteen years; had known Mrs. McDonald's quarry since he was a boy; the tract upon which the quarry is situated contains five and seventy-six one-hundredths acres; that his firm owns a quarry in the same vicinity; the stone in Mrs. McDonald's quarry was regarded as a very good stone; it don't freeze with the frost and makes a nicer front and is a better stone than stone from Mill Creek Valley.    He had looked into the value of this quarry critically at one time and thinks he valued the land at about $2,500 or $3,000 an acre, the entire property at about $12,000 or $13,000.    The quarry was worth per month, to work it for stone, in 1893 and 1894, all the way from $200 to $250; 1895 was a bad year and it would have been worth then about $150 a month.

The witness stated he knew there was a ravine there to carry water off; the effect of filling the quarry with water is that you can not work it unless you put in machinery and pump it out, and then if the stream is heavy it would be most too expensive, because it would take all the profits to pump it out; he knew there was a stream there; there was no way to get rid of the water which had accumulated there except to pump it out on the adjoining land; he knew the Marie Castor creek very well; it empties into the Mississippi river, near Baden; the creek near Bambrick's quarry was ten or twelve feet wide.

On cross-examination the witness stated that in 1893 and 1894 the property would have been worth from $200 to

$250 the whole year around; if witness wanted to run a quarry of that kind he would be willing to pay that much for it if he could get it. With the quarry so situated, protected in that way from the flow of water, it was very valuable and very easily worked, because you could take off the best of the rock without the water even bothering you at all. You could go down to what is called the pier ledge without its bothering. He had noticed that the water used to pass through the quarry unobstructed.

It is true he testified to the value of the whole tract, which he fixed at $2,500 or $3,000 per acre and also to the rental value of the quarry, but he did not testify to either the value of the land, after the injury, or to the value of the quarry before nor after the injury. Beside the injury is alleged to have been inflicted about sixty days before June, 1893, while the evidence of this witness was with respect to the rental value of the quarry during the years of 1893 and 1894.

Another criticism of the instruction is that it should not have told the jury in determining the value of the quarry, that they were at liberty to consider its rental value, and all other facts and circumstances in said case as appear by the evidence.

The rental value of property is one of the criterions by which its money value may be arrived at, and may be properly received in evidence and considered for that purpose. And so may all other facts and circumstances in evidence. Therefore the instruction is in form correct, the only objection to it being the want of evidence upon which to predicate it.

Defendant claims that error was committed in refusing a number of instructions asked by him, but this contention is untenable for the reason that the instructions that were given covered every phase of the case.

For error in giving the instruction by the court of its own motion, we reverse the judgment and remand the cause.

GANTT, P. J., and SHERWOOD, J., concur.