————o————

ELBERT PINNEY, Respondent, vs. WM. M. BERRY, Appellant.

1. *Nuisance, action for—Notice—Request to abate.*—In order to maintain an action of damages for nuisance erected on defendant's land, by a previous owner, it should appear that defendant had notice or knowledge thereof. But plaintiff need not prove a request to defendant to abate the same.

2. *Nuisance, general statement sufficient, when—Specifications, when required.*—In complaint for a nuisance, it is not necessary to detail all the particular injuries which result therefrom. It may be sufficient to specify the main fact,

| | |
|---|---|
| 61 | 359 |
| 98 | 25 |

| | |
|---|---|
| 61 | 359 |
| 36a | 263 |
| 38a | 138 |

| | |
|---|---|
| 61 | 359 |
| 101 | 91 |
| 40a | 178 |
| 40a | 444 |

| | |
|---|---|
| 61 | 359 |
| 46a | 274 |

| | |
|---|---|
| 61 | 359 |
| 48a | 317 |

| | |
|---|---|
| 61 | 359 |
| 50a | 156 |
| 51a | 326 |
| 53a | 296 |

| | |
|---|---|
| 61 | 359 |
| 115 | 674 |
| 116 | 275 |

| | |
|---|---|
| 61 | 359 |
| 120 | 188 |

| | |
|---|---|
| 61 | 359 |
| 66a | 441 |

| | |
|---|---|
| 61 | 359 |
| 87a | 434 |

| | |
|---|---|
| 61 | 359 |
| f163 | 222 |
| 88a | 284 |

but if it is attempted to particularize the resulting injuries, all that are designed to be proved should be stated.

3. *Nuisances to land—Measure of damages—Value of land just before and after commission of injury; rules inapplicable, when—Rental values.*—The rule. that in actions for nuisance, the measure of damages is the difference between the market value of the land.just before and immediately·after the occurrence of the injury, has no application to such nuisances as may be removed directly after the verdict, or for the continuance of which a second or third action may be maintained, or which may be abated by the order of court. In such cases a proper criterion by which to estimate the damages, is the loss in the rental value of the property, sustained by the continuance of the nuisance.

4. *Nuisance—Measure of damages—Loss actually sustained.*—In suit for nuisance the general rule is, that plaintiff's measure of damages is the loss actually sustained up to the commencement of the suit.

## *Appeal from Jasper County Court of Common Pleas.*

### *G. W. Crow & Geo. T. White,* for Appellant.

I. Defendant bought the mill and dam long after the same was erected, and defendant did not heighten it, nor is there any proof that plaintiff gave defendant notice of the injury with a special request to remove said dam before the bringing of this suit. (Ang. Wat. Cours., § 403; 1 Hill. Torts, 621, § 26.)

II. The court erred in refusing defendant's instruction numbered four. (6 Mo., 228).

The court erred in admitting plaintiff's evidence of a diminution of the salable value of plaintiff's farm and homestead, and of the value of a spring or springs within the banks of the river, and of permanent and prospective injuries to said farm and homestead, under defendant's objections. (Hill. Torts, 573, § 16; Id., 602, § 11; 15 Mo., 153; 6 Mo., 228.)

### *E. J. Montague,* for Respondent.

I. The rule of damages laid down by the court below was correct. The established rule is " the difference between the value of the plaintiff's premises before the injury, and the value immediately after the injury." (1 Hill. Torts, 608, § 18; Id., 609, §§ 18a.) The benefits to be taken into ac-

count, are special and peculiar, accruing to plaintiff alone. (1 Hill. Torts, 609, § 18a.)

II. Upon the facts of this case, notice and request were not necessary, and if necessary, such notice need not be "written." (Conhocton Stone Road vs. Buffalo, New York and Erie R. R. Co., 51 N. Y., 573; Brown vs. C. & S. R. R. Co., 12 N. Y., [2 Kern.] 486; Irvine vs. Wood, 51 N. Y., 224.)

The evidence showed that the dam was erected on appellant's land. He permitted the erection, and was therefore liable. (2 Greenl. Ev., § 472; Staples vs. Spring, 10 Mass., 72.)

III. The evidence shows that appellant raised the dam by filling it with brush and dirt, and gravel, and made the water stand higher in the creek and the little stream. This was equivalent to an original erection, (1 Hill. Torts, p. 624, § 26;) and a continued nuisance, (Id., 572, § 16.)

IV. The second instruction very properly declares that he who permits a nuisance to be erected on his land, becomes liable for all injuries created thereby (2 Greenl. Ev., § 472), and left the jury to determine the fact of such permission, and, also, the fact as to whether defendant continued the nuisance from the spring of 1871 until the bringing of the suit. Both the law and the evidence supported the instruction.

NAPTON, Judge, delivered the opinion of the court.

This action was brought to recover damages for an alleged nuisance caused by a dam across a river called North Fork. The plaintiff owned a small farm just above the dam, and alleged in his petition that defendant "erected and maintained" a dam, which caused the water in the river to flow up a branch running from plaintiff's house down the river, and thus destroyed the value of about twenty acres of his land, and impaired the drainage of the remainder, and cut off convenient communication with a part of his land on the side of the river opposite to his dwelling house, and that this overflow and subsequent subsidence filled up the branch with mud, leaves, etc., thereby creating a nuisance which injured

the health of his family. The answer denied these allegations and averred that the dam was constructed under the order of court, and in conformity to the statute. The replication denied this, and as there was no proof on the subject, we may dismiss this allegation from consideration.

It appeared on the trial that the plaintiff bought his farm in the spring of 1867; that Berry, the defendant, then owned the land, on which the dam was built in the succeeding winter, but the dam and mill were built by some other persons, who exercised exclusive ownership over the dam, etc.; but how this ownership was acquired nowhere appears, whether by sale, or lease, or mere verbal or written permission to occupy. At all events, in 1871, Berry took possession of the dam and mill, and as the dam was out-of repair, he rebuilt it, as some of the witnesses say, higher than it was before, and, according to others, merely filled with brush and gravel, etc. the upper logs previously on the dam. The evidence in regard to the effect of this dam, on the plaintiff's premises occupies a great number of pages of the record, and, on many points, is very conflicting.

No exception was taken to any of the testimony except this: The plaintiff offered to, prove that his homestead and farm were rendered less valuable per acre, and that his spring was destroyed, and that his spring was worth——dollars. This evidence was objected to as irrelevant upon the ground that the action was on the case for a nuisance, and that the plaintiff could not recover for diminution of the salable value of his homestead and farm, nor for permanent injuries, nor for prospective injuries. This objection was overruled and an exception taken.

The plaintiff then proceeded to state the value of his farm and its diminution in value by the dam, and estimated that diminution at one-half.

A great deal of evidence was given in regard to the spring. The plaintiff estimated this at five hundred dollars, and his expenses in hauling water, occasioned by the loss of the spring, at five dollars per month.

The court gave the following instructions to the jury, at the plaintiff's instance, and exceptions were saved to them by the defendant:

1st. "If the jury believe from the evidence that the defendant Berry raised or repaired the dam in question in the spring and summer of 1871, and that defendant kept and maintained said dam across North Fork, and that in consequence of said dam any part of the land of plaintiff was overflowed, and that plaintiff was injured thereby, or that plaintiff, in consequence of said dam, has been hindered in the free use and enjoyment of his premises, prior to the commencement of this action the plaintiff is entitled to a verdict in his favor."

2d. "If the jury believe from the evidence that defendant, Berry, at any time since the year 1867, and prior to the commencement of this suit, has kept and maintained a dam across North Fork, and that in consequence of the keeping and maintaining of said dam, the waters of said creek have been made to flow back upon the lands of plaintiff, and that plaintiff has been injured thereby, then plaintiff is entitled to recover."

3d. "If the jury believe from the evidence that defendant took possession of said dam across North Fork, and raised the height thereof in the year 1871, and kept and maintained said dam after raising the same, up to the time of the commencement of this suit, the defendant is liable to the damages to plaintiff's homestead, occasioned by the erection and maintenance of said dam."

4th. "If the jury believe from the evidence that the defendant permitted the erection of the mill-dam in question on his land, and that he purchased the said dam in 1871, and continued the same to the time of bringing this suit, then defendant is liable for whatever damages result from the erection and maintenance of said dam."

The court refused the following instructions asked by defendant:

1st. "The plaintiff on the evidence is not entitled to recover."

2d. " Unless the defendant erected the dam in controversy, or after he purchased the same, the plaintiff gave him notice of the fact that it flowed his lands and did him damage, and also made a special request on the defendant to remove the same, the jury will find for defendant."

3d. " If the jury believe that the dam in controversy was not erected by the defendant, but that defendant purchased the same, and that he has not raised the altitude of said dam since he purchased the same, the plaintiff cannot recover in this action unless the jury find from the evidence that the plaintiff gave to defendant notice that said dam flowed the lands of plaintiff, and did plaintiff damage, and also made a special request on defendant to remove the same before the institution of this suit."

4th. " To entitle the plaintiff to recover, he must prove that defendant erected the dam in controversy, or that after defendant purchased said dam, it overflowed plaintiff's land, and that plaintiff notified said defendant of said injury and made a special request."

The jury found a verdict for plaintiff, and after a motion for a new trial was overruled, an appeal was taken to this court.

The various objections taken on the trial and here, may be resolved into three principal points : First, was any notice necessary to defendant in this case before suit was brought, either verbal or written, with a request that the nuisance be abated? Second, was the testimony in regard to the spring legitimate under the pleadings? Third, what is the measure of damages in cases of this sort?

The question of notice in this case is raised only by the instructions asked on the part of the defendant. There is nothing said about notice either in the petition or answer. Practically the question is of no importance in this case, as the evidence was clear that Priquare, from whom defendant purchased the dam, was requested not to rebuild it, and desisted and sold out to defendant, and word was sent to defendant by plaintiff's counsel, that plaintiff objected to this dam. Whether

this was so or not was a question of fact for the jury, and the court might have been asked an instruction that, to maintain the present action, it was necessary to show knowledge on the part of the defendant or notice to him, of the existence of the nuisance. It seems to be agreed in the most recent decisions, that a request to abate is unnecessary. (Contractors S. R. vs. B. N. Y., etc., 51 N. Y., 582.) Indeed, very eminent judges have maintained that no notice of any kind was necessary, and that this doctrine originating in Penruddock's case, which was a *quod permittat prosternere*, is not applicable to our modern actions on the case. (Brown vs. Cayuga & S. R. R. Co., 2 Kern., 486.) The better opinion, however, seems to be that, in order to maintain an action for damages resulting from a nuisance on defendant's land, where such nuisance was erected by a previous owner before conveyance to defendant, it is necessary to show, that before the commencement of the action, the defendant had notice or knowledge of the existence of the nuisance. All the defendant's instructions, it will be perceived by recurring to them, required special notice and request to abate, and they were therefore all properly refused.

And this question of notice was not material if the dam was originally constructed on defendant's land by his permission, in the winter of 1867–68. The testimony is, that it was built by other parties, but whether by defendant's permission, he continuing to own the land, is not clear. It was in the power of the defendant to have made this entirely clear, and as he did not attempt this, it might be inferred that he owned the land all the time, from the building of the dam to its ultimate purchase by him in 1871. Under such circumstances no notice to him would be necessary.

The second point of exception taken here relates to the admission of testimony relative to the spring in the overflowed branch, and its value to plaintiff. This was objected to as not stated in the petition.

No intimation is given in the petition that the overflow by back water covered up a valuable spring, and thereby re-

quired the plaintiff to undergo considerable expense in haul-
ing water from other supplies. It is distinctly alleged that
this overflow prevented drainage; that it was the cause of
sickness in his family, and that it destroyed the value, for ag-
ricultural purposes, of some twenty acres of land. Nothing
is said about the loss of a spring, or of the expense of hauling
water elsewhere.

In Smith vs. McConathy (11 Mo., 518) the declaration
charged that the defendant erected a distillery on his land,
and divers slop pools and hog styes, and that defendant fed
a large number of hogs in these pools and styes, with the slops
from said distillery ; that large quantities of slops and offal
passed from said styes into a certain creek called the Bonne
Femme, the waters of which ran towards, through and over
the lands of plaintiffs, whereby certain noxious and offensive
smells and stenches, arising from the offal and slops, entered
the dwelling house of the plaintiff, and rendered the same
unwholesome, and greatly disturbed the plaintiff in the en-
joyment of said dwelling house and farm. The plaintiffs, on
the trial, offered to prove that the waters of the Bonne Femme
were rendered unfit for the plaintiff's stock, but the court ex-
cluded the evidence, observing: "It is true that the declara-
tion alleges that the dwelling house and farm were rendered
unwholesome and uncomfortable by reason of the nuisances
complained of; but the natural and fair inference from the
language of the declaration is, that the inconveniences men-
tioned were occasioned by noxious vapors arising from the
water, and not from the use of the water for drinking, either
by the plaintiffs, their servants, or cattle."

It is not necessary, in a complaint like the present, to detail
all the particular injuries which result from the alleged
nuisance. It might be sufficient to specify the main fact,
but if it is attempted to specify particularly the injuries re-
sulting from the principal one, all that are designed to be
proved should be stated. As the case must be remanded for
other reasons, an amendment in this respect would be the
safer course.

In regard to the measure of damages, it will be observed that the case was submitted to the jury without any instructions being asked or given on this point; and if parties prefer this course they must, of course, take the consequences of a mistake on the part of the jury.

But in this case the point is raised by the admission of evidence to which objections were taken at the time. The court obviously regarded the difference between the value of the land without the nuisance, and its impaired value subject to the nuisance, as the proper measure of damages. And so it is laid down in the books in general terms when speaking of injuries to real estate.

In the work of Shearman & Redfield on this subject, it is said : "In an action for a negligent injury to real property, the rule of damages generally adopted, is to allow the plaintiff the difference between the market value of the land immediately before the injury occurred, and the like value immediately after the injury is complete." "Sec. 602." And this seems to have been the view of the court in allowing the plaintiff to prove the value of his land before the nuisance, and its market value after. But it is obvious that this rule has no application to such nuisances as may be removed the day after the verdict, or for the continuance of which a second or third action may be maintained, or which may be abated at the instance of the injured party, by the order of a competent court. The plaintiff is only entitled to compensation for the loss actually sustained prior to the suit, by the nuisance.

Hilliard, in his work on Torts, says : "The rule of damages is the injury actually sustained at the commencement of the suit, and a party cannot recover in this action for permanent or prospective injury. This is an action by a reversioner for damages done to the reversion by cutting off the eaves of a building belonging to him, and by erecting a wall with a drip over his premises ; as there may be repeated actions for continuing the nuisance, evidence of a diminution in the salable value of the premises is not admissible." (Bateshull vs.

Read, 37 Eng. L. & E., 317.) The same principle is maintained in Hatch vs. Dwight, (17 Mass., 289.)

The difference between the market price of land at one time and another might, it is true, tend indirectly to some conclusion as to its rental or usufructory value at the same periods, but such evidence without explanation is well calculated to mislead a jury.

The evidence in regard to injury to the health of plaintiff's family was undoubtedly admissible on the issue presented; and though an estimate in money of such damage is not very easily made, and the cost of medicines and doctor's bills have nothing to do with it, yet its effects upon the value of the occupancy may be quite material, and ought to be considered by the jury. Property thus exposed to malaria would be less valuable to the owner if occupied by him, and command a smaller rent if it was desired to rent it. So also the inconvenience of a circuitous route for fire-wood and timber, if occasioned by the nuisance, and the overflow. and destruction of a valuable spring would be proper objects for compensation in such an action. In short, the damages would be the loss sustained, by the continuance of the nuisance, to the rental value of the place, and not the difference between its market value as an absolute estate before and after the nuisance.

The judgment is reversed and the cause remanded for a new trial. The other judges concur.