## BUNGENSTOCK, Appellant, v. NISHNABOTNA DRAINAGE DISTRICT.

### Division Two, June 11, 1901.

1. **Practice:** MOTION TO STRIKE OUT: WAIVER. Where appellant moved at the trial to strike out a part of his adversary's pleading, and that being overruled he replied, denying all new matter therein, he waived his right to have such ruling reviewed on appeal.

2. **Private Nuisance:** DRAINAGE DITCH: MEASURE OF DAMAGES. Where, under the facts alleged and the evidence adduced, the nuisance is a private one (in this case, the construction of a drainage

ditch, which injured the farm of the plaintiff as a place of residence, rendering the air and water of his well noxious, and causing water to stand on the land and become stagnant in the old channel), it is not necessary to plaintiff's recovery that he allege or prove any special damage, but if the injuries are of a permanent character, the measure of damages is the difference between the market value of the land just before and immediately after the occurrence of the injury.

3. ———: ———: ———: PRICE OFFERED. Plaintiff testified that he had been offered $75 per acre for his farm before the ditch was dug, but asked $80, but he had been offered only $40 per acre after the ditch was constructed. *Held*, this evidence furnished no guide by which the jury might arrive at the true damages to the farm, although under the entire evidence he was entitled to nominal damages.

4. ———: ———: ———: NOMINAL DAMAGES: ADMISSION. To tell the jury in defendant's instructions that plaintiff "can not recover more than nominal damages," is to admit that plaintiff is entitled to nominal damages, and if the jury finds a verdict for defendant after such instruction has been given, their finding should be set aside as in disregard of the court's instruction.

5. ———: ———: REMEDY: AMOUNT: RIGHT OF WAY. If by unskillful construction of a ditch through plaintiff's land, for the purpose of straightening a river and draining other lands above plaintiff's, his land or appurtenances are damaged (by the collection of stagnant waters in the old channel, causing his well to be filled with foul waters, the cellar to fill, and the atmosphere to become unwholesome, etc.), he is entitled to a verdict for the amount of such damages, and the measure thereof is the difference between the value of the land or farm before the ditch was dug and after it was dug. And this damage he is entitled to above and beyond the damages awarded him by the condemnation commissioners for the right of way for such ditch.

6. ———: ———: HIGH WATER. In such case it is misleading and erroneous to instruct the jury that the drainage company was not required to construct its ditch so as to prevent an overflow in time of high water. The duty imposed on it by law is to so construct it as to prevent the overflow except in case of extraordinary high water or floods.

Appeal from Atchison Circuit Court.—*Hon. C. A. Anthony,* Judge.

REVERSED AND REMANDED.

*Kendall B. Randolph* for appellant.

(1) The motion to strike out that part of the answer enclosed in brackets should have been sustained. That part of the answer constituted no defense whatever. The money assessed by the commissioners was for right of way and not for the privilege of damming the water on the plaintiff's land and making a stagnant pool of the river. The purpose of the ditch as alleged by defendant in its answer was to straighten and deepen the channel of the river. Edmondson v. Moberly, 98 Mo. 523. (2) All of that testimony as to the condition of the river before the ditch was constructed was incompetent and tended to mislead the jury, and should have been excluded. The law of contributory negligence has no more place in an action of this sort than has the law of self-defense. Paddock v. Somes, 102 Mo. 239. (3) The testimony relative to the successful working of the ditch for the purpose of draining the lands in the drainage district was not relevant to any issue in the case, and was calculated to mislead and prejudice the jury. Bielman v. Railroad, 50 Mo. App. 151. (4) It was error to permit counsel to ask what it would have cost plaintiff to have ditched the river so as to let the water out, and error in the court to refuse to strike out that testimony and to escape ruling on the point by saying "that is passed for the present." This was unfair to plaintiff, and put before the jury among numerous other improper things, evidence calculated to mislead them. Paddock v. Somes, 102 Mo. 238. (5) The condemnation proceeding to obtain right of way for the ditch was improperly admitted in evidence. That

proceeding constituted no defense to appellant's cause of action, and was calculated to mislead and prejudice the jury.    Edmondson v. Moberly, 98 Mo. 526.    (6) Instruction 4, given in behalf of defendant, does not state the law of this case and does not treat the facts fairly.    It tells the jury that if the overflow was an unusual one, the plaintiff can not recover, and wholly eliminates from the case the question of the embankment on the sides of the ditch acting as a dam and holding the water on the land until it soaked and evaporated away.    1 Addison on Torts (Wood's Ed.), p. 237, note, pp. 232, 233; Smith v. Fletcher, L. R. 7, Exch. 302; Wilson v. New Bedford, 108 Mass. 261. (7) Instruction 5 wholly ignores plaintiff's evidence, and also ignores the fact that the stagnant water was a nuisance of the defendant's creation, and ignores the rule for estimating damages occasioned by the presence of a nuisance.    1 Addison on Torts (Wood's Ed.), par. 292; Freudenstein v. Heine, 6 Mo. App. 287; Smith v. McConathy, 11 Mo. 517; Berlin v. Thompson, 61 Mo. App. 234; Paddock v. Somes, 102 Mo. 237.    (8) Instruction 7 has the same vices as the other instructions, and all practically tell the jury that the defendant was not required to leave the plaintiff's farm in as good condition as to drainage as it found it when it began the construction of the ditch, and the jury might have understood from this instruction that respondent had the right to dam the surface water back on to the appellant's land and hold it there without being liable therefor. Abbott v. Railroad, 83 Mo. 271; Rychlicki v. City of St. Louis, 98 Mo. 497.    (9) The effect of the verdict in this case is to declare that the defendant has not created and is not maintaining a nuisance, and to compel the plaintiff to submit for all time to come, to the damages and discomforts and dangers to health shown by the evidence, unless reversed.    Paddock v. Somes, 102 Mo. 226.    (10) The verdict is so glaringly against the evidence as to make it apparent that bias and prejudice, or

undue influence, controlled the jury and produced the verdict. The court, therefore, erred in overruling the motion for a new trial. Paddock v. Somes, 102 Mo. 239.

*John P. Lewis* for respondent.

. (1) Appellant's objection to our showing that the ditch was successful for drainage purposes, is untenable. If it was successful, that certainly tends to show, in part at least, that it was properly laid out and constructed. (2) Appellant in his fourth point cites Paddock v. Somes, 102 Mo. 238, and insists that evidence offered to the effect that the sediment thrown up in old bed could have been removed by appellant at trifling expense, was error. The appellant never excepted to the ruling, or rather want of ruling, of the court on this point. Respondent's instruction number 4 is but the supplement or counterpart of appellant's instruction 1, perfectly consistent with it and correct as a statement of law. Gillespie v. Railroad, 6 Mo. App. 554; Railroad v. Reeves, 10 Wall. 190. (3) There was absolutely nothing, except mere guesswork, on which the jury could have assessed any damages whatever. Sheedy v. U. P. D. Works, 25 Mo. App. 530. (4) Both rainwater and overflow water are mere surface waters, "the common enemy which every man may fight," and from which no man in the lawful exercise of his rights, is bound to protect another; and upon this theory, if there were no other reasons, respondent's instruction number 7 was correct. McCormack v. Railroad, 37 Mo. 457; Abbott v. Railroad, 83 Mo. 282. (5) What is done or permitted under authority of law is not a nuisance. Payne v. Railroad, 112 Mo. 61; Givens v. Van Studdiford, 72 Mo. 129, 86 Mo. 156; R. S. 1889, secs. 8251 to 8265. (6) The defendant, which we might style a quasi public corporation, did the work

through contractors, Gowdy & Dean, who had sole personal management and supervision of the work until completed. Defendant would not be liable for anything done by them outside of their contracts. They were to build dams on the lower or downriver side of the old beds, to keep water in new ditch, but were to leave upper side open so that rain and overflow waters could run out into new ditch, as they run down. The temporary bridge dam put in by contractors on the upper side at "C" to enable them to do their work, was not done by authority of or by contract with defendant, and was removed before the work was finally accepted. Had this caused any damages, respondent would not have been liable for them. 14 Am. and Eng. Ency. of Law (1 Ed.), 803; Clark's Admr's v. Railroad, 36 Mo. 224. (7) The only dam that could possibly hold any water back would be one on the upper side of the ditch, but by the unquestioned evidence, no such dam existed after the work was accepted in August, 1897, except low bars of mud, formed by the stream itself, in throwing out sediment to the side of the ditch and for which action of the water, defendant was not responsible. When the right of way was condemned the damages assessed included all damages that would thus naturally result, such as cutting off water, emptying or filling a pond, leaving a natural depression to fill with water backing up from embankments, etc. McCormack v. Railroad, 57 Mo. 433; Railroad v. Story, 96 Mo. 622; Railroad v. George, 145 Mo. 44; Myers v. St. Louis, 8 Mo. App. 266; Myers v. St. Louis, 82 Mo. 367; Watts v. Railroad, 23 L. R. A. 675; Hoster v. Hawsoth, 16 Mo. App. 485; Railroad v. Dawley, 50 Mo. App. 480.

BURGESS, J.—This is an action for damages claimed to have arisen by reason of the improper construction by defendant, a corporation organized under the general laws of this State for drainage purposes, of a drainage ditch through plain-

tiff's land. The petition, after alleging the incorporation of defendant, and that plaintiff is the owner of the lands through which the ditch runs, proceeds as follows:

"That said ditch or drain enters plaintiff's land and crosses through and over the same as follows:

"Commencing in said Nishnabotna river at a point one chain east and seven chains south of the northwest corner of the northeast quarter of section 4, township 63 of range 41, in said Atchison county, Missouri, thence running south two degrees west, 21.21 chains to intersect said river on the west line of said quarter section across the lands of this plaintiff.

"That said drain or ditch was dug and constructed during the year A. D. 1897, by defendant. That defendant still owns, maintains and operates said drain or ditch. That said drain or ditch, through and across plaintiff's land, is about eight feet deep and about twenty feet wide at the top and divides plaintiff's land into two tracts. That by reason of the improper location and unskillful construction of said ditch, the channel or bed of the Nishnabotna river where it passes through the lands of the plaintiff above described, has been so dammed up as to form a stagnant pool of water, of the full width of said channel and for a distance of two miles in length. That water stands therein during the entire year and having no current becomes and is foul and noisome, and by reason of the accumulation of stagnant water in said river channel, foul and noisome vapors arise therefrom and the atmosphere in and about said channel and about the residence on said premises has become and is poisoned and is thereby rendered unwholesome and unhealthy. That by reason of the improper location and unskillful construction of said ditch foul water is caused to accumulate in the plaintiff's cellar and to render same unfit for use, and foul water is caused to penetrate into plaintiff's well and to render the water thereof unwholesome and unfit for use. That by reason

of the location and construction of said ditch as aforesaid, and the damming up of the channel of said river as aforesaid, water overflows and accumulates upon the pasture lands of the plaintiff, and causes the soil thereof to become and remain wet and injures the grass and timber growing and standing thereon, wherefore by reason of the premises aforesaid the plaintiff says that he is damaged in the sum of five thousand dollars, for which sum, together with the costs of suit, he prays judgment."

For another and second cause of action the petition alleges that defendant during the years A. D. 1896 and 1897, for the pretended purpose of draining its said land and to straighten and widen the Nishnabotna river, did construct and maintain a ditch, or drain, and dykes, through and across the lands of plaintiff, as well as the lands of other persons. That said ditch or drain enters plaintiffs land and crosses through and over the same as follows:

"Commencing in said Nishnabotna river at a point one chain east and seven chains south of the northwest corner of the southeast quarter of section four, township sixty-three of range forty-one, in said Atchison county, Missouri, thence running south two degrees west, 21.21 chains to intersect said river on the west line of said quarter section across the lands of this plaintiff. That said drain or ditch was dug and constructed during the year A. D. 1897, by defendant. That defendant still owns, maintains and operates said drain or ditch. That said drain or ditch, through and across plaintiff's land, is about eight feet deep and about twenty feet wide at the top and divides plaintiff's land into two tracts; that it is impossible for plaintiff to get to his land lying west of said drain or ditch without crossing said drain or ditch, and that defendant has failed, neglected and refused to put in a crossing or bridge across said drain or ditch for the use of plaintiff, and still refuses and neglects to put in said bridge or crossing, and that plaintiff will be

put to great expense, time and labor, to build and construct said bridge, to plaintiff's great damage, in the sum of five hundred dollars; that the damages awarded plaintiff by the commissioners appointed to assess damages, were damages for the right of way and included no other damages than the damages arising from the value of the land for said drain or ditch. Wherefore plaintiff asks judgment for the sum of five hundred dollars and for his costs.

"Plaintiff for another cause of action states that defendant, its agents, servants and employees in the construction and making of said ditch or drain during the time aforesaid, wantonly and without cause, did take, destroy and appropriate to its own use the following property, belonging to plaintiff: two hundred and twenty-five feet of lumber, worth six dollars; four hundred pounds of barbed wire, worth fifteen dollars; one hundred fence posts worth ten dollars; seventy-two trees, consisting of oak, walnut and ash, worth five dollars per tree, three hundred and sixty dollars. That the only pasture plaintiff had for his stock was on the said quarter section through which said ditch or drain was constructed, and by reason of the carelessness and negligence of defendant, its agents, employees and servants in leaving plaintiff's fence down so plaintiff's stock could stray off of plaintiff's premises, and said plaintiff's stock did so stray off, and was put up, and plaintiff was compelled to pay out large sums of money to get his stock and had to pay for damages his said stock had done to the amount and to the damage of plaintiff in the sum of sixteen dollars, and all caused through negligence, carelessness and wrong of this defendant, and that by reason of the gross negligence, carelessness and wrong of defendant, its agents, employees and servants in leaving plaintiff's said fence down as aforesaid, plaintiff was compelled to lose the entire use of thirty acres of good pasture land worth four dollars per acre and to plaintiff's damage one hundred and twenty

dollars. That defendant entered said lands of plaintiff with said ditch or drain and where defendant left said plaintiff's land with said ditch or drain, defendant, is agents, employees and servants, wrongfully, negligently tore down plaintiff's fencing and left the same down so that stock strayed into plaintiff's field and destroyed plaintiff's crops to plaintiff's damage in the sum of one hundred and fifty dollars. That defendant refuses to pay for the destruction, taking and appropriating to its own use of plaintiff's property, or for the damages done to plaintiff by reason of the wrongful acts of defendant. Wherefore, plaintiff says he has been damaged in the aggregate in the sum of six hundred and seventy-seven dollars, for which he asks judgment and for costs."

The answer of the defendant, caption being omitted, is as follows:

"Now comes the defendant and for answer admits that it is an incorporation organized and incorporated in Atchison county for drainage purposes, and states that it was so incorporated in January, 1892. Denies that the plaintiff is the owner of the southeast quarter of section three in township sixty-three of range forty-one, or that he has any houses, cellars, wells or improvements thereon. Admits that in the years 1896 and 1897 the defendant caused to be surveyed and constructed a ditch and dykes across the routes indicated in plaintiff's petition, also across the intervening spaces between the routes so designated, admits and asserts that said ditches and dykes were made for the purpose of straightening in part and in part in deepening the channel of the Nishnabotna river as an aid and assistance in draining said Nishnabotna district. That in the construction of said ditches and dykes the defendant let the work to a firm of contractors known as 'Gowdy & Dean,' consisting of R. E. Gowdy and T. A. Dean, who had said contract as to the order and manner of the construction thereof, the size,

depth and course of such ditch and height of dykes being reg-
ulated by contract.    That defendant did not superintend or
manage the construction thereof.    That the work was finally
accepted from said contractors and they were fully paid on
August 11, 1897.    Defendant denies that it negligently, care-
lessly, or improperly constructed said works or that plaintiff'
was in any way damaged by the construction thereof.    Denies
that water is dammed up on plaintiff's land or near his land
by the construction or maintenance of said works, or that they
are in any manner rendered more unhealthy or less valuable
or convenient.    Defendant admits that said ditch passes for a
short distance, about one-fourth of a mile, across a narrow strip
or neck of plaintiff's farm [but defendant states that a right
of way was condemned across plaintiff's said farm by pro-
ceedings in this court for that purpose, that there was assessed
to plaintiff for his damages in so crossing his farm and appro-
priating his land the sum of three hundred and sixty dollars,
which was paid into this court for him, and was by him re-
ceived long prior to the institution of this suit, but after the
damages complained of in this suit had occurred.    That all
damage caused plaintiff by the construction of said ditch and
dykes were included and contained down to the time of con-
structing such ditches and dykes so that defendant says that
it was by plaintiff's own wrong that the stream became filled
and choked up, and but for his own wrong the construction of
such ditches and dykes would have been unnecessary].

"The defendant further answering states that it admits that
it is an incorporation and alleges that it was incorporated by
proceedings in the circuit court above named under and by
virtue of the provisions of the Revised Statutes of 1899, con-
tained in section 6517, and following sections and amendments
thereto.    That defendant, after its incorporation, to-wit, on the
twenty-ninth day of July, 1896, instituted in said circuit court

proceedings against Jennie K. Campbell, Charles C. Campbell, Elmer Campbell, Elsie Campbell, Archibald Campbell, Lena Grah, Frederick Bungenstock and Patrick Ryan, for the condemnation of a right of way one hundred feet in width over and along the line designated in plaintiff's petition, that commissioners upon proper notice were appointed by this court to assess the damages that might accrue to the defendants in said cause, including the above named plaintiff; that by such proceedings it was sought to condemn such right of way for the purpose of excavating a ditch and building dykes or embankment along the ditch for the purpose of straightening the Nishnabotna river, and of draining the lands of said drainage district. That the commissioners so appointed viewed and examined the premises of the plaintiff across which said right of way ditch and dykes were to run and upon such view appraised plaintiff's damages for the taking of such right of way, and the construction therein of such ditch and dykes at the price and sum of three hundred and sixty dollars. That said damages were intended to cover and did cover all the matters of damage complained of in plaintiff's petition. That said commissioners filed their report in the circuit court aforesaid which was duly and regularly approved by said court. That said drainage district paid into court for the use of said Bungenstock said sum of three hundred and sixty dollars, the amount of damages so assessed to him for the matters complained of in this case. That said circuit court in said condemnation proceedings, on the seventh day of October, 1896, entered judgment condemning a right of way of one hundred feet wide across said Bungenstock's land for the purpose aforesaid. That said Bungenstock afterwards accepted and receipted for said sum of three hundred and sixty dollars damages so assessed to him.

Vol 163 mo—14

"Defendant further answering states that it did not itself perform the work of clearing such right of way or excavating and building such ditch and dykes, but let the contract to do such work to a firm of contractors, viz., Gowdy & Dean, a firm consisting of R. E. Gowdy and Thos. A. Dean, but charges that they were not authorized by this defendant to take any of plaintiff's property not included in the right of way so condemned, and that they were required by this defendant to perform such work in a skillful and workmanlike manner, and defendant asserts that none of plaintiff's property not included in said assessment of damages was taken, and that the work was skillfully and properly done, but defendant states that said Bungenstock complained to said contractors that his fences had been thrown down and left open and that his stock had got into improper fields and pastures causing damages, and that said contractors, not admitting any right to any additional damages, still, for the sake of quiet and peace, paid to said Bungenstock the sum of twenty dollars damages on account thereof."

On the twenty-seventh day of September, 1898, plaintiff filed his motion to strike out all of that part of the last paragraph in the first count of defendant's answer, beginning with the words "but defendant," and included in brackets. The motion was thereafter overruled, whereupon plaintiff filed a reply denying all new matter set up in the answer.

The facts are substantially as follows: The plaintiff had for many years been the owner of three hundred and fifty-four acres of land described in the petition, and through which the ditch passes. He occupied the premises for farming purposes. The buildings and improvements were good.

The location of the Nishnabotna river and the ditch are as shown by a plat which is as follows:

Bungenstock v. Nishnabotna Drainage District.

Section 4,  Township 63,  Range 31

I hereby certify that the above described survey was by me officially made and that the same was carefully and correctly executed, and that a full history of said survey and description of the corners established, together with a plat of the same, is of the Surveyors Record of Atchison County, Missouri.

"A."  Fred Bungenstock owns Lots 8, 9, 10, 11 and 12; Pat Ryan Lots 5, 6 and 7; Mrs. C. Buck, Lots 3 and 4; Mrs. Lena Groh, Lots 1, 2 and 13.
 Bill for work $2.00.

The general direction of the river is south and east; the waters of the ditch flow south. Between the points marked "B" and "C" on the ditch, the bed of the river is used for the ditch and the ditch runs into the river at "B" against the current of the river.

Lots 8, 9, 10, 11 and 12, shown on plat, indicate the land of the plaintiff. It embraces with other lots all of the land in the bend of the river. The center of the river from the northwest corner of lot 9, around to the southwest corner of lot 8, forms the boundary of that part of plaintiff's land lying in said bend. The ditch crosses plaintiff's land from "C" to "D." It is about two miles from "B" around the bend, following the river, to "D." The Nishnabotna river is 350 yards north and 250 yards south of plaintiff's dwelling-house.

The ditch was constructed by defendant under contracts with Thomas A. Dean and R. E. Gowdy. The work was begun in November, 1896, and completed in August, 1897. The manner of construction of the ditch caused the water in the two miles of river around the Bungenstock bend to stand in the bed of the river and stagnate and to continuously remain in that condition and to be covered with a green scum and to give off offensive odors and to render the locality unhealthy. The water so standing in the bed of the river caused the water to stand in the ground and near to the surface thereof which at times rendered plaintiff's well unfit for use and kept his cellar filled with water and plaintiff was rendered sick in consequence of the stagnated water and unwholesome well-water.

Previous to the construction of the ditch the Nishnabotna river had always been a running stream except occasionally in time of extreme drouth the water had failed to run for short periods. During the high water in July, 1898, the water overflowed from the ditch on to the land in the bend west of the ditch and could not escape therefrom, owing to the embank-

ment which had been built along the sides of the ditch, and remained there until the ground absorbed it, which was about two or three weeks after the other waters had subsided.   Water never stood there before; it sometimes ran over the land but went out with the river.   There was in that bend west of the ditch about fifty-five acres in cultivation, the balance in pasture.   The water drowned out about twenty acres of clover meadow and between twenty and thirty acres of blue grass.   It drowned out about half of the entire tract west of the ditch. The clover was worth five dollars per acre, the blue grass was worth three dollars per acre.

As to the stagnant water in the river creating offensive odors and damaging the plaintiff, a witness by the name of Lahne testified as follows :

"Q.   Would you consider it a damage?   A.   If I owned his place or that place I am on I certainly would, if I intended to make my home there, unless it was drained off some way.   Mr. Bungenstock has as good a house as I know in the country almost; I expect that house cost him three thousand dollars; he has barns, some two barns yet I guess, and numerous outbuildings; I suppose he has twenty or twenty-five acres in orchard; he has a vineyard and all other kinds of small fruit; the orchard, vineyard and buildings are around close by the dwelling house; I think they are in about as good a place as he has; if I had Mr. Bungenstock's place, I would certainly try to get rid of that standing water there, I would not like to move the buildings, because that would be a big expense, I would try and get the water away."

B. F. Rummerfield, a civil engineer, who surveyed the ditch for the defendant drainage district, testified that the water was forced up hill about a quarter of a mile, and "I think it was practical to follow the stream up, but they didn't put in sufficient dykes to prevent the old stream from being

filled at high stages of the water; they ought to have fixed sluice-boxes with trap-doors so as to let the water out when it got into the old bed."

The land of plaintiff was not in the defendant drainage district. The ditch was constructed for the purpose of carrying off the water from the lands lying some distance north of plaintiff's farm.

The following also occurred while plaintiff was in the witness chair:

"I have been living on my land, up there where the ditch is, thirty-three years. Now, I own about 355 acres, I did own 400. The ditch was finished last year; I could not tell exactly; they were working on it three or four times; they would work on it and then stop and then work again. Clover hay is $3 a ton, some is worth $4, and there is about four tons an acre. I think it is worth $12 an acre; half of it is mine and half my son's. I was damaged $6 an acre.

"Q. What effect did the water standing in the old bed of the Nishna north and south of your house have on you and your family? A. I was sick every day; I had to lay three or four days in bed, and had fever and biliousness, and nights I could not sleep, and the water I could not drink. It stinks. The water in the river smells just like eggs; I had to move away.

"Q. And how was your health after you moved away? A. Good; everybody when I came up here says, 'Bungenstock, you look ten years younger.' Down there, every fourteen days I had to lay abed a couple of days, bilious. That house cost me $4,000; that stable $350. They are all the things that amount to anything. Then down below, there are two barns there. The cellar is 30x30; there are three cellars; it is cemented. The walls are three feet thick; made of brick; it was a cement floor; it is out now; the water raised up and

broke it. I had to fill in the cellars. I hired a man to bring me 103 or 104 loads of dirt; I filled it about two feet; I could not say what it cost me. I hired the man by the month. It took him over three weeks. I made him bring it in and stamp it down.

"Q. What was the value of your place and the improvements on it prior to and after the ditch was built? A. I have been offered $75 and I wanted $80 an acre. After the drainage company put the ditch in, they offered me $40. I can't live there any more. It makes me sick. It has effect on my well. The water don't smell good, and stinks, and I believe that is what makes me sick. I have not paid any doctor's bills. I bought some pills. I took them three or four days. If I laid in bed three days I could not work. Sometimes my wife fed the stock. They make that ditch. I said that, that ditch don't do me no good, it do me harm. I said, that stink water make me sick. I say I like fresh water. I could not dig another well that would furnish me good water as long as that water stands there. It would be just the same. I could get good water half a mile north to my next renter. I have no other well to cook or drink out of."

The defendant was permitted, against plaintiff's objection, to introduce testimony as to the condition of the river prior to the construction of the ditch; and also as to how the ditch operated for drainage purposes, for the benefit of the land in the drainage district.

The contracts provided for the building of embankments along the side of the ditch.

The following also occurred and refers to the original condemnation proceedings for the putting of the ditch through plaintiff's land.

"Counsel for defendant: 'I want to introduce the record of the condemnation proceedings.'

"Counsel for plaintiff: 'We object to the condemnation proceeding, on the ground that it constitutes no defense to any part of the plaintiff's cause of action contained in any count of plaintiff's petition. It constitutes no defense to any evidence admitted by the court in this trial.'

"Counsel for defendant: 'Here is the petition to the judge of the court for the appointment of commissioners; we will consider that in evidence. Then here is the notice that was given; we will consider that in evidence. Here is the order of court appointing the drainage commissioners, that is, the commissioners to assess damages; we will consider that in evidence. Here is the report of the commissioners. I will read that part referring to Bungenstock.'

"Counsel for plaintiff: 'We will admit, if the court please, that Mr. Bungenstock was duly notified and accepted the money and gave his receipt for it, but in making this admission, we do not intend to waive our objection to the competency of the evidence. We will admit that the report of the commissioners was confirmed and a decree was rendered on the report of the commissioners. We will admit that the proper proceedings were had to condemn the right of way, and that it was assessed at $360 and he received the money. That said proceedings were instituted in the circuit court of Atchison county, Missouri, on the twenty-ninth day of July, 1896. That all pleadings, orders and judgments therein are in proper form. We admit the existence of these facts, but do not waive our objection to their competency and relevancy as evidence, and except to the ruling of the court on that point.' "

The court gave to the jury, upon the motion of the plaintiff, the following instructions, numbered one, two, and three, which said instructions are in words and figures as follows, viz.:

"1. The jury are instructed, on motion of the plaintiff,

that if they believe from the evidence that defendant during the year 1897 constructed or caused to be constructed, the drainage ditch mentioned in evidence through the lands of the plaintiff and through the lands adjoining the land of the plaintiff, and that said ditch was so unskillfully constructed as to prevent a proper drainage of the plaintiff's land west of said ditch, and within the bend of the Nishnabotna river, mentioned in evidence as the Bungenstock bend, and that by reason thereof he has suffered any damage to his pasture or clover lands, it will be the duty of the jury to find for the plaintiff on the first count of the petition in such sum as you believe he has been damaged thereby, that is to say, if you find the injuries above stated were the result or caused by the construction of said ditch and were not caused by the unusual or unforeseen floods.

"2.   The jury are further instructed on the motion of the plaintiff that if they believe from the evidence that the defendant, during the year 1897, constructed or caused to be constructed the drainage ditch mentioned in evidence through the lands of the plaintiff, and through lands adjoining the same, and that by the unskillful construction of the said ditch the waters of the Nishnabotna river are dammed up and held back in the original channel of said river in the vicinity of the dwelling-house of the plaintiff and by reason thereof the said waters have become stagnant and emit offensive odors, and that the plaintiff is damaged thereby, it will be the duty of the jury to find for the plaintiff on the first count such sum as you believe from the evidence he has been damaged thereby, and in estimating such damages you will take into consideration the effect thereof, if any, upon the health of the plaintiff, the condition of his cellar and well which you may find was occasioned thereby and the general annoyance, if any, he has suffered in consequence thereof.

"3.    The jury are further instructed that in considering any and all matters pertaining to the first count of the petition, they should not take into consideration any evidence as to whether or not the ditch was of benefit to the lands lying in the district known as the Nishnabotna Drainage District. And the jury are further instructed that in considering the said first count they should not take into consideration the damages allowed to the plaintiff by the commissioners for damages for taking the right of way through his premises."

And thereupon the court gave to the jury, on motion of the defendant, the following instructions, numbered from one to seven inclusive:

"1.    The court instructs the jury that plaintiff, under the evidence, is not entitled to recover anything upon the second count, that is, upon the count in regard to the bridge.

"2.    The court instructs the jury that under the evidence in this case they will exclude from their consideration all the matters complained of in both the second and third counts, for the reason that the evidence does not warrant any recovery on either of said counts.

"3.    Under the pleadings and evidence in this case the jury can not consider any question as to damages arising out of the damming the old bed of the river at the south end of the ditch near Fleshner bridge, caused by the action of the water by throwing up a deposit in the old bed at that point.

"4.    Although the jury may believe that plaintiff lost his blue grass and clover by an overflow of water from the ditch or from the old bed of the river, or from such water being backed up on them, yet if you believe that such overflow was an unusual one, such as could not have been ordinarily anticipated or guarded against, then plaintiff could not recover on account of any such loss.

"5.    Even though you may find that the defendant un-

skillfully constructed the ditch in controversy, and that plaintiff's well and cellar were made less useful or wholesome thereby, yet for such injuries, under the evidence in this case, plaintiff can not recover more than nominal damages.

"6.   If the jury believe from the evidence that the drainage works in controversy were laid out, constructed and completed in a skillful and prudent manner, then in that case plaintiff could not recover any damages on account of the backing up or standing of the water in the old bed of the stream.

"7.   It was not required of the defendant to so construct its ditch as to provide a means for the escape of rainwater that might fall into the old beds of the river, nor was it required to so construct their ditch as to prevent the overflow, in time of high water, or water from the ditch to these points of the bed on the upper side of the ditch."

To the giving of said instructions and each of them, except number three, the plaintiff objected, and then and there at the time duly excepted.

And thereupon the jury returned into court the following verdict, viz.:  "We, the jury impanelled and sworn in the above entitled case, do, upon our oaths, find for the defendant."

After an unsuccessful motion for a new trial plaintiff appeals.

After plaintiff's motion to strike out part of the defendant's answer was overruled, he filed a reply to the answer denying all new matter therein contained, and by reason thereof waived his right to have the action of the court overruling the motion reviewed on this appeal.   [Gale v. Foss, 47 Mo. 276; Ely v. Porter, 58 Mo. 158; Scovill v. Glasner, 79 Mo. 449; Williams v. Railroad, 112 Mo. 463; Walser v. Wear,

141 Mo. 443; Springfield Engine & Thresher Co. v. Don-
ovan, 147 Mo. 622.]

Plaintiff complains of the ruling of the court in admit-
ting, over his objection, evidence as to the condition of the
river before the ditch was constructed. The contention is
that the evidence was incompetent and tended to mislead the
jury. While we are of opinion that the evidence should not
have been admitted because immaterial, we are unable to
conceive how plaintiff could have been prejudiced by reason
of its admission, and the judgment should not be reversed
upon that ground.

So with respect to the evidence as to the successful work-
ing of the ditch for the purpose of draining the lands in the
drainage district, it was not pertinent to any issue in the
case, and should not have been admitted, but it was not preju-
dicial to plaintiff's right and would not justify a reversal of
the judgment.

It is asserted by plaintiff that error was committed in
permitting counsel for defendant to ask what it would have
cost plaintiff to have ditched the river so as to let the water
out, and in refusing to strike out the testimony upon that point,
but said, "that is passed for the present." While the record
discloses that plaintiff made timely objection to the admission
of the evidence, it fails to show that he saved an exception to
the action of the court in that regard, and it is not therefore
the subject of review upon this appeal.

It is claimed by plaintiff that the condemnation pro-
ceeding to obtain a right of way for the ditch was improperly
admitted in evidence, for the reasons that the proceeding con-
stituted no defense to plaintiff's cause of action, and was cal-
culated to mislead and prejudice the jury. Plaintiff was a
party defendant to that proceeding, and was awarded damages
therein on account of the ditch being opened through his land,

which he received, and he now prosecutes this action for damages to his property "which he alleges were occasioned by reason of the improper location and unskillful construction of said ditch," and it seems to us that no better evidence as to the location of the ditch could be had than that record. Moreover, it was properly admitted as initiatory to or basis for showing that the damages claimed by plaintiff because of cutting his farm in two, and the failure by defendant to erect a bridge across the ditch for his convenience, were included in the damages awarded him in the condemnation proceeding.

It is argued that defendant's fourth instruction is erroneous in that it tells the jury that if the overflow was an unusual one the plaintiff can not recover, and eliminates from their consideration the question of the embankment on the sides of the ditch acting as a dam and holding the water on the land until it was taken up by the ground or evaporated. But this instruction is but the counterpart of plaintiffs' first, and when they are considered together are not in conflict. In fact, plaintiff's instruction, after reciting the injuries complained of, tells the jury, "that if you find the injuries above stated were the result or caused by the construction of said ditch, and were not caused by unusual and unforeseen floods," they would find for plaintiff, while defendant's instruction under comment was nothing more than a presentation of the converse of these propositions.

Defendant's fifth instruction is challenged upon the ground, as contended, that it wholly ignores plaintiff's evidence, and the fact that the stagnant water was a nuisance of the defendant's creation, as well also as the rule for estimating damages occasioned by the presence of a nuisance. Defendant, however, contends that there was no evidence upon which the jury could have assessed any damages whatever, hence, the instruction was free from error. The action is prosecuted

upon the theory that the result of defendant's improper location and unskillful construction of the ditch created a private nuisance, by reason of which the water was dammed up in the river so that it formed a stagnant pool of water, of the full width of the channel of the river for a distance of two miles in length. That water stands therein during the entire year and having no current becomes and is foul and noisome, and by reason of the accumulation of stagnant water in said channel, foul and noisome vapors arise therefrom and the atmosphere in and about said channel and about the residence on said premises has become and is poisoned and is thereby rendered unwholesome and unhealthy. That by reason of the improper location and unskillful construction of said ditch, foul water is caused to accumulate in the plaintiff's cellar and to render same unfit for use, and foul water is caused to penetrate into plaintiff's well and to render the water thereof unwholesome and unfit for use.

Under the facts alleged, and the evidence adduced by plaintiff, the nuisance was clearly a private one (Paddock v. Somes, 102 Mo. 237), and being such it was not necessary to plaintiff's recovery that the petition allege or that he prove any special damages (Smiths v. McConathy, 11 Mo. 518), but as the injuries are of a permanent character, the measure of damages was the difference between the market value of the land just before and immediately after the occurrence of the injury (Pinney v. Berry, 61 Mo. 359). Upon that question plaintiff testified, that he had been offered seventy-five dollars per acre for the land before the ditch was dug, but that he wanted eighty dollars per acre, and that he had been offered forty dollars per acre after it was dug. While this evidence furnished no guide by which the jury could arrive at the proximate difference between the value of the land before and after the ditch was dug, yet, under the evidence, plaintiff

was clearly entitled to recover nominal damages, and this much is impliedly conceded by the instruction which told the jury that, "for such injuries, under the evidence in this case, plaintiff can not recover more than nominal damages." By the use of the expression "more than nominal damages," is implied the right to recover *nominal* damages, but, in disregard of both the instruction and the evidence, the jury found for defendant, and their verdict should have been set aside upon motion of plaintiff upon those grounds.

If by reason of the unskillful construction of the ditch plaintiff's land and appurtenances were damaged and his farm rendered less valuable than before the ditch was dug, he was entitled to a verdict for damages therefor, and the measure of such damages was the difference between the value of his farm before the ditch was dug, and after it was dug. The evidence upon this question, however, was very indefinite and unsatisfactory, and upon a retrial should be made clear, or at least approximately so.

Defendant's sixth instruction was simply negative of the cause of action stated in the first count of plaintiff's petition, and unobjectionable.

Defendant's seventh instruction was misleading and erroneous in that it told the jury that defendant was not required to construct its ditch so as to prevent the overflow in time of high water, when the duty imposed on it by law was to so construct it as to prevent the overflowing of plaintiff's land, except in case of extraordinary high water or floods.

For the reasons indicated, the judgment is reversed and the cause remanded for further trial. *Sherwood, P. J.,* and *Gantt, J.,* concur.