The testimony in the ease does not show that any damage was done to the house situated on the premises that were overflowed.
Under the issue made by the pleadings the plaintiff below, living at the time of the injury in the premises claimed to be damaged, testified to the character of the loss and described to the jury the condition of the premises before and after the injury, and, also testified that he had kept no account of the money-expended by himself in the matter of restoration of the premises after the injury, and that he was therefore unable to make any estimate of the cost of restoration. An examination of the testimony of the only other witnesses who testified on behalf of the plaintiff, discloses the fact that the witnesses called by the plaintiff were real estate agents who, having no actual knowledge-of the extent or character of the injuries complained of in the petition, testified in answer to hypothetical questions as to the value of the premises before the injury and the value of the premises after the injury.
The trial judge had before him the rule fixing the measure of damages to real property, laid down in Shearman & Redfield, Section 750, that:
“In an action for negligent injury to real property, the rule ■of damages generally adopted is to allow the plaintiff the difference between the market value of the land immediately before the injury occurred and the like value immediately after the injury is complete, or the difference in rental value where the injury is only temporary, and not to take into consideration th'e cost of repairing the injury so as to replace the land in its former condition. But where the injury could have been repaired at an expense much less than the depreciation in the *55 market value of the whole land, the plaintiff has only been allowed to recover the expense of such repair with compensation for loss of use.”
This rule justified the introduction of testimony tending to ■show the exact character of the loss for the purpose of determining whether the injury was of a permanent character — that is, produced an irreparable loss and depreciation of the market value of the property — or whether on the other hand the injuries were of such a character as that no damage having been done to the structure and the entire loss having been sustained in such way as to enable the owner easily to repair the same, ■and were therefore of a temporary character, easily repaired; and until the testimony had been concluded it was impossible to know which rule should be applied in the measurement of the damages — that is, the rule relating to damages of a permanent nature or the rule relating to damages of a temporary character; in other words, whether the injury was reparable or irreparable.
The facts shown by an examination of the testimony are clear in defining the character of the loss. The plaintiff’s own testimony in describing the situation of the property immediately after the injury shows that the same could easily have been restored to its former condition by the expenditure of time, labor and money. The estimate of loss, the plaintiff says in his testimony, was not confined to any expense of restoration; only a partial account was kept, and he presented the matter to the jury upon the theory that the permanent injury had occurred to the market value of the property and that the rule of damages relating to the same was applicable to his case. Over the objection of the city the expert witnesses supporting the plaintiff testified that the property had a value prior to the overflow, when not known as “overflow property,” that it did not have after the injury when it was known as property subject to overflow (see testimony, pp. 44, 63, 68, 102, 103, 119, -130, 131 and 140). These expert witnesses had no knowledge of the injury done, and were permitted in the face of objection to testify as to their opinions of the market value of the property before the injury and the market value of the same afterward, and the difference between the same was the amount which under the court’s ruling was permitted to go to the jury in estimating the *56 loss or damage sustained by reason of the overflow of the water on the premises of the plaintiff.
There was, therefore, presented to the jury by the testimony the fact that the property had been injured by the overflow of water from the gutter, the effect of the same on the physical condition of the plaintiff’s property, some few items of expense occasioned by the overflow, the opinion evidence of the plaintiff and the three expert witnesses as to the market value of the premises before the overflow and the market value of the same after the overflow. The testimony seems to leave no reasonable doubt as to the character of the injury complained of. The premises could have been restored, and thus the injuries were not of such nature as to cause a permanent depreciation in the market value of the property, and the case presented, therefore, the application of the rule above referred to, and also as stated by Sedgwick on Damages, Section 932, that: “Where the injury is easily reparable, the cost of repairing or restoration would be the measure of damages,” and while the cost of repair may not in .all eases be the measure of damages, but only the evidence of the damage (15 Gray, 97), the jury in the case as presented were denied the opportunity of determining the amount due the plaintiff by the application of what we find to be the correct rule, because no figures were furnished by the plaintiff as to the cost of restoration.
And if, as the testimony shows, the injury caused by the negligence of the defendant, the city of Cincinnati was not permanent in its character and produced no injuries that were irreparable, then the plaintiff was bound by the rule laid down by the text-writers on the subject of damages, to show every reasonable item of expense made necessary by the city’s negligence, and there was, therefore, no room in the case, as shown by the testimony, for the application of the doctrine applicable to cases of permanent injury to real estate; and the rule laid down in 135 N. Y., at page 116, seems applicable to the case at bar. In that case there was no evidence offered by either party In regard to the effect of the injury upon the market value of the lot.
In the ease at bar there was no testimony offered as to the cost of restoration, and that led the court in the New York cas *57 to remark: “We can not know from the record whether the diminution in value was more or less than the cost of restoration,” and then the court proceeds to say that if it appeared from the cross-examination of the plaintiff’s witnesses that the diminution in value had been less than the cost of restoration, then the diminution in value would have been the proper measure of damages.
But the defendant, the city of Cincinnati, did show that the cost of restoration was less than the diminution in the market value and the measure of damages was thereby fixed,.as we find, by the rule found in Shearman & Redfield, page 1289; Sedgwick on Damages, Section 932.
The city having by the testimony been shown to have been negligent, and no question being made as to the notice, and the injury complained of being admitted as the direct cause of the negligent act or omission complained of, the plaintiff was entitled to receive such a sum of money as the measure of his damages as would have made him whole, so that when he received the amount named by the verdict of the jury he would be no poorer in this world’s goods than he was before the injury.
The rule for the measurement of damages of real estate of a temporary nature where the property can be easily repaired finds expression in the doctrine of equivalents, i. e., for a thing taken, a right of which one has been deprived, a loss one has sustained, or damage one may have suffered through the negligence of another, he must be made whole by the party causing the injury, and whether the action be for nuisance or trespass, it is only where the extent of the injury has been in question, whether of a temporary restraining or a permanent nature, that any difficulty has arisen in applying the rule that where the party can ascertain the amount of his loss, the measure of damages will be the sum required to place the property damaged back in the same physical condition that existed prior to the injury. If the loss suffered is of such character that by the exercise of "careful labor and the expenditure of money complete restoration may be had, then the application of the rule for assessing damages should be made; the exercise of the same is simple, and the party complaining is restored to all of the *58 rights of which he was deprived by the incident of the overflow. 61 Mo., 359; 101 N. Y., 98.
The rule herein named seems to be a rational rule. It is ■not one that works injustice to any of the parties concerned. The condition of the property before the overflow was an easily ■ascertainable and fixed fact; so, also, the condition after the injury. What happened as the result of the overflow and what loss occurred, were facts apparent, and the cost of restoration ■could have been ascertained either by contract made to repair the injury, or by payment for whatever material and services were required in and about restoration, together with any other loss by way of rent or otherwise. There were no insurmountable obstacles or difficulties in the application of this rule to the case at bar. The costs of reparation or restoration would not, therefore, seem to be so much a question for expert or opinion ■evidence as for the testimony of persons personally acquainted with the condition of the property, the requirements for restoration, and the cost of the same.
The plaintiff, preferring to adopt the rule laid down by Sedgwick on Damages at 932, that the cost of repairs and permanent depreciation could not be recovered in the same action, ■presented his case on the theory that permanent injury has been .sustained, that the market value of the property had been permanently depreciated by an overflow of water from a gutter on his premises, and he was permitted by the charge of the court to have the jury find a sum that would mark the measure of ■damages representing not only a partial cost of restoration, but that would also represent the damage to the reputation of his property because of the single event that caused the water from an adjoining street to overflow on his premises.
The eases referred to by counsel do not justify the conclusion that loss in the reputed value of property, where the injury is of the character complained of in the ease at bar, can be considered by the jury as an element of loss. Reputation does not come from the happening of an accident nor as the result of negligence, which may not be presumed to be continuous, nor has the rule ever been extended in cases of this character so far as to permit an expert or opinion witness, having no knowledge of the facts, to testify as to- his opinion of the value of the *59 property before the same had been known as being overflowed, and the value afterward, although bound by law to presume that it would never again be subject to another such overflow, for thus to assume would be equivalent to presuming that the city would continue the existence of the nuisance. 63 Tex., 223, 345; 145 Pa. St., 612.
Chas. J. Hunt, J. V. Campbell, for the city of Cincinnati.
Wright & Wright, for Dan. Thew Wright. .
We are of the opinion, therefore, that the ease at bar did not present facts which justify the application of the rule in the assessing of damages where the injuries were of a permanent nature, and that it was error to have permitted the jury to consider the weight of testimony tending to show damage to reputation, as it also was to refuse the special charges asked denying the application of the rule by which depreciation in the market value of the premises was shown independent of the effect of the physical injury upon the premises themselves, and that for these reasons the judgment should be reversed.