# J. H. Toebbe and Annie Toebbe v. City of Covington.

(Decided December 7, 1911.)

Appeal from Kenton Circuit Court
(C. C. L and E. Division).

Cities—Constructing Sewer in Street—Damages to Adjacent Cellar— Recovery Denied—In an action by plaintiffs against the city of Covington, Kentucky, for damages to their property in the construction of a sewer in the street which they claim flooded their cellars, held, that measured by the rule laid down in the case of Ewing v. City of Louisville, 140, Kentucky 726, the injury of which they complain is in fact of a temporary character that could be remedied by cleaning the sewer, and the instructions

of the court on the measure of damages authorized the jury to give plaintiffs all they were entitled to under the pleading.

F. J. HANLON, for appellant.

JOHN E. SHEPPARD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

J. H. Toebbe is the owner of property on 19th street in the city of Covington. In 1903 a sewer was constructed in 19th street. In 1906 a drain pipe was laid from Toebbe's property to this sewer, the sewer was tapped and the pipe attached. In November, 1910, Toebbe and his wife brought a suit against the city of Covington, in which they sought to recover damages alleged to have been sustained by reason of the city's permitting the said sewer to become closed or stopped up, whereby water was caused to back up into the cellar. The city denied liability, and upon this issue the case was tried out, with the result that a verdict was returned in favor of the city. The plaintiffs appeal.

From the pleadings and proof it appears that as early as in July, 1910, water began to accumulate in the plaintiffs' cellar, and continued to do so until in October following, when plaintiffs had the drain from their cellar taken up and entirely disconnected with the sewer. The hole which had been made in the sewer was closed and cemented and the space in between the sewer and the cellar wall filled and the hole in the cellar wall closed. The water, however, continued to come into the cellar as it had theretofore done.

It is the theory of the city that the drain pipe from plaintiffs' property to the sewer was not properly laid, that is, that it was laid too deep, and that this caused the water to back up from the sewer in the drain pipe; and after the drain pipe was disconnected it was the theory of the city that the accumulation of water in the cellar was due to seepage through the wall from an old wooden drain which ran near the cellar wall and had been theretofore used to drain the cellars of adjacent property owners. Plaintiffs' entire complaint was that the city negligently permitted its sewer to become closed or stopped up with mud and trash and suffered it to remain in this condition after it knew that their property was being damaged because thereof.

Several grounds are relied upon for reversal, but they may all be grouped under two general heads: First, that the court erred in restricting the plaintiffs in the introduction of their evidence to such as would tend to show temporary damage rather than permanent injury to the property; and second, that the court did not properly instruct the jury.

As to the first question, a sufficient answer is found in the statement of plaintiffs' cause of action embodied in the petition and its several amendments. There is no complaint made that the sewer was not properly constructed, or that the plan upon which it was constructed was imperfect. But the sole cause of complaint is that the city negligently suffered and permitted it to become stopped up. The remedy for this trouble, of course, would be to clean out the sewer, and, if this was the cause of plaintiffs' damage, as soon as the sewer was cleaned out the cause producing the damage would be removed. We are of opinion that the court correctly held that the damage to the property from this cause was not a permanent one, but a temporary one, and hence the court properly limited the evidence toward proving the claim set up by plaintiffs in their pleadings. If the sewer was properly constructed it is difficult to understand how the water could have escaped therefrom into plaintiffs' cellar after the connection was broken and the drain pipe taken out. Yet the evidence offered by plaintiffs undoubtedly showed that water did accumulate in the cellar after this connection was broken much after the same manner as it had previously done. On this showing the jury was warranted in finding that the water which was causing the plaintiffs annoyance did not come from the sewer at all, but from the old, unused drain, or source other than from the sewer. At all events it was a question for the jury to say whether or not this water did come from the sewer and as they found against plaintiffs their verdict must be upheld, unless the second ground for reversal relied upon by plaintiff, to-wit, that the court did not properly instruct the jury, is well taken.

The court gave the jury the following instructions:

"If you believe from the evidence that the sewer in 19th street referred to in the proof was negligently permitted to become and remain stopped up, and that by reason thereof the water or sewage from said sewer was caused to flow back into plaintiff's property through

the connecting pipe referred to in the proof and plaintiffs were thereby injured, and you further believe from the evidence that defendant knew or by the exercise of ordinary care could have known of the stoppage in said sewer, if there was any, long enough before the flowing back of the water or sewage into plaintiffs' property through the connecting pipe, if any there was, so as to have enabled the defendant by the exercise of ordinary care to have removed or caused to be removed said stoppage before said flowing back of said water or. sewage into plaintiffs' property and thereby prevented the injury to plaintiffs' property, if there was any on said account, then you will find a verdict for plaintiffs.

"If you believe from the evidence that the sewer in 19th street referred to in the proof was not stopped up, or if you believe from the evidence that it was stopped up, but that defendant did not know of said stoppage or by the exercise of ordinary care should not have known of said stoppage long enough before the flowing back of the water or sewage through the connecting pipe into plaintiffs' property to have enabled defendant in the exercise of ordinary care to have removed or caused to be removed said stoppage before said backing of said water or sewage into plaintiffs' property; or if you believe from the evidence that there was a stoppage in the sewer in 19th street but that said stoppage did not cause the water or sewage to flow back through the connecting pipe into plaintiffs' property, or if you believe from the evidence that the water or sewage was caused to flow back into plaintiffs' property through the connecting pipe by reason of any other cause whatsoever other than the stoppage of the sewer in 19th street, then in either or any of said events you will find a verdict for defendant.

"The word 'negligently' as used in the foregoing instruction means the failure to exercise ordinary care, and the words 'ordinary care' mean that degree of care which ordinarily careful and prudent persons engaged in the same or a similar business ordinarily exercise under the same or similar circumstances.

"If you find a verdict for plaintiffs you will award them such sum of money as you may believe from the evidence will fairly and reasonably compensate them for the cost of disconnecting the drain referred to in the proof, not exceeding on this account the sum of $28, and

for the diminution, if any, in the value of the use and occupancy of the property referred to in the proof to plaintiffs from the time of the flowing back of the water or sewage into plaintiffs' property in July, 1910, up to the date of the filing of the petition herein arising solely and exclusively by reason of the water or sewage flowing back into the property and cellar of plaintiffs through the drain pipe referred to in the proof, if you believe from the evidence that said water or sewage did so flow back into said cellar through said drain pipe, but your verdict must not in any event exceed the sum of $1,500, the amount prayed for by plaintiffs in their petition.

"The court instructs the jury that they shall not consider in arriving at a verdict in this case, any damage or injury to the plaintiffs, or their use or enjoyment of their property occasioned by any overflowing of said property prior to the overflow described in the proof as occurring in July, nor subsequent to the disconnecting of the pipe from plaintiffs' property to said sewer, up to the filing of the petition on November 7, 1910."

These instructions certainly presented fairly and fully plaintiffs' claim for the consideration of the jury. If they had believed from the evidence that the accumulation of water in plaintiffs' cellar was due to a stoppage in the sewer, and that this fact was known to the city authorities in time to have enabled them to have cleaned the sewer and avoided the damage to plaintiffs' property, then they must have found for plaintiff. The only theory upon which they could find for the city is, either that they did not believe from the evidence that this water came from the sewer, or else, if it did, that the city had no notice that the sewer was stopped up. There is evidence in the record to the effect that, at different times when examined by the witnesses who testified in this case the sewer was found to contain standing water, evidencing that it was, to same extent, obstructed, but not so as to prevent the passage of water through it. And in the absence of any further showing the jury would have been warranted in accepting the contention of the plaintiffs that this accumulation of mud or dirt in the sewer caused the water to back up into their cellar; but when the jury was shown that after plaintiffs' drain pipe was disconnected with the sewer the water continued to accumulate in plaintiffs' cellar, then necessarily, in the absence of some showing that the sewer was faultily constructed or

out of repair; the jury was warranted in believing that this water was not coming from the sewer at all, but from some other source. The two possible theories as to how it came there were presented to the jury, and we are not prepared to say on the evidence before us that the finding is not in accord with the weight thereof.

The instruction on the measure of damages is in accord with that approved by this court in the case of City of Madisonville v. Hardman, 29 Rep., 254, in which the court said:

"If, however, the nuisance is temporary in its character, and such a thing that it may be readily remedied, removed or abated, the measure of damage is the depreciation in the rental value of the property, if it be rented out, or, if it is occupied by the owner, the damage to its use and occupation, and in this class of cases successive actions may be brought for damages caused by continuance of the nuisance. In applying these rules, it is often a difficult matter to determine whether the nuisance is permanent or temporary, or to establish any fixed rule. The solution of the question depends in a large measure upon the facts of each case. In the case at bar the sewer was completed to a point in front of appellee's house in the spring of 1903, and the city could at any time have removed the trouble by extending the sewer beyond his premises and to the place where it seems to have been contemplated it would go, but when the trial was had in January, 1905, no change had been made, and it is fair to assume that the city intends the sewer to remain as it was when work on it was stopped in 1903, and, therefore, it may be said to fall within the line of permanent structures, and the measure damage to appellee's property was as stated in the instruction—the depreciation in its market value directly caused by the nuisance."

In that case the damage was permanent, but the court pointed out clearly the difference between a case in which damage for permanent injury is allowed and one in which the recovery can be had only for injuries that are temporary in their nature.

In the more recent case of Ewing v. City of Louisville, 140 Ky., 726, the distinction between that class of cases in which a recovery is allowed for permanent injury from that in which recovery is allowed for temporary injury only is clearly drawn, the court saying:

''The rule approved by this court as to the measure of damages in a case like this is that where the injury or nuisance complained of is permanent, the measure of recovery is the depreciation in the market value of the property, and the one recovery must suffice.  *  *  *  If, however, the injury to the property is temporary in its character, that is such as can be remedied by abating the nuisance, or removing the cause of the injury, and readily repairing the property, the measure of damages is the reasonable cost of repairing the property and the depreciation in its rental value during the period sued for, if it be rented out, or owned for renting; or if it be occupied by the owner, in addition to the reasonable cost of repairs, the damage to its use, that is the diminution, if any, in the value of the use of the property during the continuance of the nuisance or injury, covered by the period for which the action is brought.''

Measured by this rule, it is apparent that the injury of which appellant complains is, in fact, of a temporary character, one that could be entirely remedied, and the cause of the injury removed by clearing the sewer, if that is what produced the injury. In the light of the decisions of this court the instruction on the measure of damages authorized the jury to give to the plaintiffs all that under their pleadings they were entitled to recover.

Judgment affirmed.