## CITY OF HARRISONVILLE, MO., v. W. S. DICKEY CLAY MFG. CO.
### No. 9241.

Circuit Court of Appeals, Eighth Circuit.
Aug. 5, 1932.

Rehearing Denied Oct. 5, 1932.

Raymond G. Barnett, of Kansas City, Mo. (Allen B. Glenn, of Harrisonville, Mo., on the brief), for appellant.

Leland Hazard, of Kansas City, Mo. (Maurice H. Winger and George J. Winger, both of Kansas City, Mo., on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and CANT, District Judge.

CANT, District Judge.

The parties will be designated as in the court below, where W. S. Dickey Clay Manufacturing Company was plaintiff, and city of Harrisonville was defendant.

Plaintiff is a corporation organized under the laws of the state of Delaware. Defendant is now, and for several years last past has been, a city of about 2,000 inhabitants in the state of Missouri. A small stream, known as Town creek, flows through or near the northerly line of said city and takes its course westerly and southerly near the westerly line thereof. During some periods, this stream is nearly, or quite dry. Prior to the year 1923, said city had no general sewer system. During said year such a system was installed. Thereby, the sewage of the city was collected and was conveyed for treatment to an Imhoff tank, so-called, which was located near the westerly boundary of said city and closely adjacent to the stream above referred to. For some years past, plaintiff has been the owner of a considerable tract of land lying along the said creek, and, in the main, down stream from said tank. Said land has been, and is, used for pasturage purposes. Said tank is, and has been, only about 60 per cent. efficient in removing offensive matter from the sewage which is conducted thereto, and the effluent from the tank therefore carries about 40 per cent. of the putrescent matter originally in such sewage. Such effluent is discharged into said Town creek and is carried by said creek through and alongside of plaintiff's land. The sewage, so discharged into said creek, fouls the waters of the stream and the banks thereof, and offensive odors constantly arise from such waters and from the foul substances which are deposited along said bank. The introduction of such sewage into said creek renders the waters thereof unfit for drinking by the cattle which are pastured on the land referred to. By the installation of a supplementary tank, the sewage disposal system of said defendant may be so improved that the effluent therefrom would be comparatively harmless and inoffensive.

This suit was brought to obtain injunctive relief against the maintenance of the sewer system and Imhoff tank in their present imperfect state and for damages. Defendant admits that the matters complained of constitute a nuisance, but asserts that the same is permanent in its character; that the court is without power to abate the same; and that plaintiff's only remedy is an action for damages to its land on the theory that present conditions will continue indefinitely in the future. Defendant also claims that its financial condition is such that it cannot install the supplementary system, which is contemplated by the decision of the trial court. It claims also, and specifically, that the award hereinafter mentioned, to plaintiff, of the item of $3,500, on account of the estimated cost of clearing the creek bed and banks, is unwarranted.

The trial court found that something like 100 acres of plaintiff's land have been and

212

are injuriously affected by the offensive matter deposited in said stream; that the maintenance of said plant in the condition in which it has been operated constitutes a temporary nuisance, which may be easily abated; that the rental value of plaintiff's lands has been reduced by said nuisance in the sum of $100 per annum for the period of five years immediately preceding the entry of the decree herein; and that it would cost $3,500 to remove the offensive matter from along the banks of said stream in its course along and through the lands of plaintiff. An injunction was therefore ordered, and it was adjudged that plaintiff recover from defendant the sum of $4,000, of which $500 should be for the diminished rental or usable value of plaintiff's lands throughout the said period of five years, and $3,500 should be the estimated expense of removing offensive matter from the bed and banks of said creek.

■ The fact that the sewage system and the Imhoff tank in question were installed pursuant to the direction of the governing body of the city does not place them beyond judicial control. Carmichael v. Texarkana (C. C.) 94 F. 561, 570—574. Approved in case of same title at 116 F. 845, 849, 58 L. R. A. 911 (C. C. A. 8). Winchell v. City of Waukesha, 110 Wis. 101, 85 N. W. 668, 84 Am. St. Rep. 902; Seifert v. City of Brooklyn, 101 N. Y. 136, 139 et seq., 143 et seq., 4 N. E. 321, 54 Am. Rep. 664.

■ A city is not authorized or justified in so collecting and discharging the sewage therefrom as to cause unnecessary injury to private persons. Carmichael v. Texarkana (C. C.) 94 F. 561; also Id., 116 F. 845, 849, 58 L. R. A. 911 (C. C. A. 8); Jones v. Sewer Improvement District, 119 Ark. 166, 177 S. W. 888; Morse v. City of Worcester, 139 Mass. 389, 2 N. E. 694; Chapman v. City of Rochester, 110 N. Y. 273, 18 N. E. 88, 1 L. R. A. 296, 6 Am. St. Rep. 366; Winchell v. City of Waukesha, 110 Wis. 101, 85 N. W. 668, 84 Am. St. Rep. 902; Edmondson et al. v. City of Moberly, 98 Mo. 523, 11 S. W. 990.

■ The nuisance here in question, being such as might be abated by order of court, is temporary in character, Foncannon v. City of Kirksville, 88 Mo. App. 279, 284; Pinney v. Berry, 61 Mo. 359, 367; Ready v. Mo. Pac. Ry. Co., 98 Mo. App. 467, 470, 72 S. W. 142, and plaintiff is entitled to injunctive relief. Carmichael v. Texarkana

(C. C.) 94 F. 561, 571, 573, 574; also Id., 116 F. 845, 849, 58 L. R. A. 911 (C. C. A. 8); Missouri v. Illinois and Chicago District, 180 U. S. 208, and authorities cited at pages 245—247, 21 S. Ct. 331, 45 L. Ed. 497; Winchell v. City of Waukesha, 110 Wis. 101, 85 N. W. 668, 84 Am. St. Rep. 902; Haskell v. New Bedford, 108 Mass. 208, 216 et seq.

■ In all cases of nuisance, as well as of other torts, and aside from the right to punitive damages in certain cases, the person sustaining the injury is entitled to recover such sum as will fairly compensate him for all detriment of every kind which he has suffered and which is traceable proximately to the wrong of which he complains. This detriment or injury may often be of various kinds. He is entitled to be made whole. He is not entitled to any excess or profit. In this respect, whatever is right and just should be done.

In cases of permanent nuisance affecting real estate, the measure of damages usually is the difference between the value of the land which is involved immediately before the imposition of the nuisance and the value of the same land immediately after such imposition, having in mind that the conditions are to remain permanent. Pinney v. Berry, 61 Mo. 359, 367; St. Louis Trust Company v. Bambrick, 149 Mo. 560, 569, 570, 51 S. W. 706; Conklin v. City of Des Moines, 184 Iowa, 384, 387, 168 N. W. 874; Foncannon v. City of Kirksville, 88 Mo. App. 279, 284.

In case of a nuisance which is properly classified as permanent, and which affects real estate, if, by the expenditure of money, the property can be restored to substantially the same condition in which it was before the nuisance was imposed, and, if the cost of such restoration would be less than the difference in the values of the property before and after it was affected by the nuisance, then, manifestly, since the question is one of compensation, and of putting the owner in as good a position financially as he was before his property suffered from the nuisance, the true measure of damage would be the cost of such restoration. Seely v. Alden, 61 Pa. 302, 306, 100 Am. Dec. 642; Heath v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 126 Minn. 470, 148 N. W. 311, L. R. A. 1916E, 977.

■ In cases of temporary nuisance affecting real estate, the rule ordinarily applicable is

that the plaintiff is entitled to recover the difference between the rental or usable value of the land as it would be without being subjected to the nuisance, and such value with the lands subject thereto. Pinney v. Berry, 61 Mo. 359, 367, 368; Ready v. Mo. Pac. Ry. Co., 98 Mo. App. 467, 470, 72 S. W. 142; Smith v. Kansas City, etc., Ry. Co., 98 Mo. 20, 25, 11 S. W. 259.

■ In some cases the foregoing rule would not afford full compensation. Under some circumstances, a temporary nuisance may cause specific damage to buildings or other property. In such cases, the rule of compensation would often require that such damage be repaired or that offensive objects be removed. This, in addition to the recovery of the rental or usable value of the land, might be the obviously practical, prudent, and economical way of restoring the owner of such land to his former condition. In some cases where continuing injury is threatened, it might be necessary to incur expense in abating the nuisance. In such cases, the reasonable cost of such repairs, removal, or abatement might properly be recoverable as a part of the damages actually sustained. Emery v. Lowell, 109 Mass. 197, 201; Shaw v. Cummiskey, 7 Pick. 76, 78; Pinney v. Berry, 61 Mo. 359, 367; Krebs v. Bambrick Bros. Construction Co., 144 Mo. App. 649, 653, 129 S. W. 425; Toebbe v. City of Covington, 145 Ky. 763, 768, 769, 141 S. W. 421; Watson v. Miss. R. P. Co., 174 Iowa, 23, 38, 156 N. W. 188, L. R. A. 1916D, 101. But in no case should a defendant be required to pay more than just compensation. This must always be the limit of the recovery. Therefore, if for special reasons, the necessary expense of such repairs, removal, or abatement would be out of all proportion to the benefits which would accrue therefrom, such expense should not be incurred and some other and more reasonable basis for estimating the true amount of compensation should be employed.

In some cases of nuisance, both temporary and permanent, certain special features such as the injurious effect of the nuisance upon the health of the plaintiff, or of his family, or the fact that the nuisance may have injured the health, or caused the death of domestic animals, and also other injuries peculiar to the specific case, must sometimes be considered. As already stated, whatever the character of the injury, if the same be traced to the nuisance as the proximate cause, plaintiff is entitled to compensation on account thereof. Unless the deposit of foul matter in the bed of the creek here in question and along the bank thereof is to be spelled out as such a special feature, we have none to deal with in this case. Such deposit, however, is what, in part, constitutes the nuisance here. The cause of such nuisance is the sewer system and the Imhoff tank, which have been referred to, and they may be considered, and are, a part of the nuisance itself.

The ordinary rules as to the measure of damages apply in this case.

■ Where, as here, both equitable relief by abatement and the recovery of damages are sought in the same action, damages sustained up to the time of the trial may be awarded. Karns et al. v. Allen et al., 135 Wis. 48, 59, 115 N. W. 357, 15 Ann. Cas. 543; Gasse v. Development & Funding Co. (Sup.) 135 N. Y. S. 732.

It is sometimes difficult to determine whether a nuisance is temporary or permanent in its character. Toebbe v. City of Covington, 145 Ky. 763, 768, 141 S. W. 421, 423. There are authorities which hold that, under some circumstances, the plaintiff has a right to elect as to which class a nuisance shall be assigned. If there were reasonable ground for difference of opinion as to whether the nuisance here in question is temporary or permanent, the court should be slow to hold the same to be permanent, except at the election of plaintiff, because the effect of such holding would be to confirm in defendant, permanently, the benefit of its own unlawful act, and, in effect, would be legalizing the original wrong of which complaint is made. Upon this phase of the case, the trial court was entirely right. In this case, however, with the installation of a supplementary tank, the condition of the creek will tend to correct itself. The effluent from the tank, then much purified, the rainfall from time to time, and the other forces of nature will all combine to restore the creek to substantially the same state in which it was before the construction of the Imhoff tank. Such elements were considered and such view taken in City of San Antonio v. Mackey (Texas, 1896) 14 Tex. Civ. App. 210, 214, 36 S. W. 760. In that case the question of the removal of offensive matter was considered, and there being no contention that the cost of such removal would be prohibitive or unreasonable, it was held that such expense was properly chargeable to the wrong-

doer. About this, under such circumstances, there could be no serious question.

As will be seen, this does not mean that the cost of removal is the correct measure of damages in all cases which may arise.

A case much more directly in point, both in its bearing upon the character of the nuisance here and upon the proper measure of damages, is Sussex Land & Live Stock Co. v. Midwest Refining Co., 294 F. 597, 604—609 (C. C. A. 8).

Following the case last cited, the allowance to plaintiff of the sum of $500 as the diminished rental value or usable value of plaintiff's lands for the five-year period last before the entry of the decree was proper. Since the entire harmful effects of the nuisance in this case are reflected in the diminished rental or usable value of the lands, and since plaintiff has the right to bring successive actions if it shall develop that the further or continuing injuries which are threatened to said lands shall actually occur, it well may be that the allowance last above referred to is the limit which may be awarded to plaintiff in this case. Assuming the nuisance to be temporary, as determined by the trial court, the right to bring such separate actions cannot be questioned.

■■■ The propriety of allowing the item of $3,500 as damages under the rather unusual circumstances of this case is more than doubtful. As already noted, the cost of abating a nuisance or of removing material from lands where such material is thereon as a result of trespass or encroachment, whether as a result of nuisance, or otherwise, may sometimes be considered; but for the reasons which will shortly be stated here, it is reasonably clear that this cannot be such a case.

It is reasonably clear that in this case, and in various others which may be supposed, the cost of removal, used as a measure of damages, would work a manifest injustice. As already stated, the finding of the trial court is that the total annual damage sustained by plaintiff on account of the nuisance in question is $100. If the award of $3,500 is to stand, plaintiff will be under no obligation to use the same in clearing out the creek and would be most unwise if it should make such use thereof; but it will thereby be provided with a fund, which, at interest rates which are reasonably current, will provide an annual income of $210, without abatement of the principal and with the right to bring other suits for damages from time to time in the future as such rights may accrue. The amount of such annual income which may be so realized will be more than twice the amount of the annual damage which up to the time of the trial had been caused by said nuisance to the lands in question. If, by way of illustration, we assume that the expense of clearing out the stream, instead of being $3,500, would be twice that sum, then, under the rule which has been applied in this case, the amount to be awarded to plaintiff as the estimated cost of abating the nuisance would perhaps be more than the value of all of its lands which are involved here; or, if the finding were that the annual damage to plaintiff's lands by reason of the nuisance was the sum of $50 only, it would be quite apparent that there must be something wrong in awarding the sum of $3,500, or in the case supposed, of $7,000, as the estimated cost of clearing out the stream and as a real item of damage which the plaintiff had sustained in addition to the loss in the rental value or the usable value of the land in question. By the application of such a rule, we, conceivably, might award a plaintiff in such a case, a sum greatly in excess of the value of all of his lands, while he still retained the ownership and was able to make a very substantial use thereof. Expenditures for removals, repairs, and abatement in such cases, in order that they may be chargeable against a defendant, and serve as a proper measure of damages, must be reasonably necessary under the circumstances. They must be made in the exercise of ordinary prudence and economy, and in the course of what is a reasonably practicable and proper treatment of the situation, having in mind the damage which has been sustained, and the benefit which will accrue to the landowner by the expenditures proposed. This would be compliance with the rule requiring the payment of just compensation. Any substantial departure therefrom would not.

To take a somewhat analogous case, by way of further illustration, we may assume that in carrying on blasting operations, great quantities of rock from the face of a precipitous cliff might be cast upon the immediately adjacent land of a third person. Whether this be a nuisance or shall be given some other name, it is a tort, and there can be but one measure of damages, whatever shall be the name applied. The land itself might be worth a nominal amount only. Let us say that it would be entirely feasible to remove all the rock, but only at a great ex-

pense. The land might be worth quite as much to the owner after the rock was thrown thereon as it was before.

To use the cost of removal as the invariable measure of damages in such cases, the plaintiff, often, would be placed in a much better position financially than if there had been no nuisance or no encroachment. It would be much to his advantage to have the nuisance developed, if only the person responsible therefor were financially able to pay such damages as might be assessed against him under such rule. It is apparent that in such cases the cost of removal has no necessary and direct relation to the amount of the loss which the plaintiff has sustained, or to the benefits, if any, which would accrue to him if such expenditure were made, and for that reason, such cost is not always the proper measure of damages to apply. If such measure were adopted, the plaintiff often would receive a sum much greater than the loss he had sustained. He would be getting much more than a fair compensation. It is reasonably clear that this would be the situation here if the item of $3,500 were allowed.

In this case the ordinary rule of allowing as damages the diminution in the rental or usable value of the land, together with the right to bring successive actions for damages, will afford ample and accurate compensation for the wrongs of which plaintiff complains.

An examination of the statutes of Missouri indicates that the financial difficulties which defendant claims would render it impossible to comply with the decree herein, are not insurmountable.

After preparation of the opinion herein, attention has been called to the case of Kent v. City of Trenton, 48 S.W.(2d) 571 (Kansas City Court of Appeals). Upon any one of two or more grounds specified in the opinion, that case was rightly decided. It has been called to the attention of this court because of the statements therein as to the character of the nuisance there involved. In reliance upon the numerous authorities hereinbefore cited, including certain cases decided by the federal courts in this circuit, we adhere to the views hereinbefore expressed.

The decree should be modified by eliminating therefrom the item of $3,500 allowed to plaintiff therein, and, as so modified, should be affirmed. Let the appellant pay one-third of the costs in this court and let the appellee pay two-thirds thereof.