María Luisa Arcelay, Plaintiff, Appellee and Appellant, *v.* Manuel Sánchez Martínez, doing business under the name of Mayagüez Dairy, Defendant, Appellant and Appellee.

No. 10753. Argued February 4 1953.—Decided January 25, 1955.

*Enrique Báez García* for appellant and appellee. *Gutiérrez, Saldaña & Sánchez* for appellee and appellant.

MR. JUSTICE SIFRE delivered the opinion of the Court.

This litigation was commenced by virtue of a complaint which alleged, briefly, that plaintiff is the owner of a house situated in a residential district of the city of Mayagüez, and that adjacent thereto defendant has installed a plant for the pasteurization and sale of milk, where industrial and commercial activities are carried on which are seriously

prejudicial to plaintiff's health, disturb the free and comfortable enjoyment of her life and property, thereby causing mental anguish, moral suffering, and damages in the amount of $25,000. It was requested that defendant be ordered to discontinue the acts of nuisance and to pay the sum claimed, plus costs, expenses, and attorney's fees. Defendant denied all the averments of the complaint and alleged certain defenses which will be considered in due time. The case went to trial and ended in the Mayagüez Part of the Superior Court by judgment ordering the defendant "to cease completely all industrial and/or commercial activities in his said plant and business at 6 p.m. of...each and every day of the week, and not to resume them until 6 a.m. of the following morning," and to adopt the measures and perform the works mentioned in the said judgment for the purpose of abating the nuisance. Both parties appealed, after a motion for reconsideration filed by the defendant was denied.

■ Defendant contends in the first assignment that the lower court erred "in sustaining the complaint without sufficient evidence." We cannot agree with such contention. According to the findings of fact, which are the basis for the judgment, plaintiff's house was erected in 1940 "and from that time until June 1950, with the exception of 1944 and early part of 1945, when she leased it to several Coast Guard officers, she has occupied and lived in it with her old mother and a foster child. The property has a value ranging from $25,000 to $30,000. At the time plaintiff constructed her house...the place was almost exclusively residential. However, several businesses have been established in the vicinity since 1939: an establishment for the sale of radios and electrical appliances, a woman's beauty parlor, a jewelry shop, an embroidery shop, a grocery store. The market place of the city is located at a distance of 65 meters. Notwithstanding the existence of these commercial establishments, the neighborhood is predominantly residential. The

only establishment using heavy machinery...is defendant's pasteurization plant..." "This business...started way back in 1945 with a small stand for the sale...of...milk..." At that time defendant used to sell from 140 to 150 liters per day. Part of the milk was occasionally made into cheese, which defendant manufactured there. The business flourished, the physical plant was enlarged, new equipment purchased, and in 1949 the defendant established the pasteurization plant which produces daily from 3,500 to 3,600 liters of pasteurized milk. The investment made by the defendant in said plant, equipment, and accessories aggregates $80,000. The plant occupies a two-story building erected *ad hoc* by the defendant, fronting Sol Street, now Santiago R. Palmer, and adjacent to and alongside plaintiff's property line. The front half of the building occupied by the plant is four feet away from the property line, and the rear half is six inches. The building is separated at the rear from plaintiff's house proper by her garage and in the front by an open space 9 to 10 feet wide, which is the entrance to the garage, and a carport having the same width."

In finding of fact No. 4, the trial court describes the manner in which the activities are conducted in defendant's plant, as well as the disturbance, inconveniences, and damages caused to plaintiff by reason thereof,[1] the latter being also

---

[1] Finding of fact No. 4 reads as follows:

"4.—Defendant's plant for the pasteurization and sale of milk is installed and operated in such a manner that it causes noise and disturbance. The noise is of such an intensity and persistence and the disturbance is such that they interfere with the quiet and peaceful enjoyment by plaintiff of the described property, thereby affecting and impairing her personal welfare. The continuous noise and disturbance start early in the morning between 3:30 a.m. and 4 a.m. every day, Sundays and rest days included, and are caused by the unloading of milk cans from the trucks in which the milk is brought to the plant; by the sudden opening and closing of the truck doors; and by the loud conversations of the drivers and their assistants as well as of the persons in charge of receiving the milk. The process of pasteurization begins between 6:30 a.m. to 7 a.m. and continues, except for short intervals, until midnight and occasionally even later. During all that time great noise is made by the boilers which generate the steam necessary for pasteurizing and heating the water used to sterilize

described in finding No. 5 to which we shall refer hereinafter. After referring to the provisions of § 277 of the Code of Civil Procedure, 1933 ed., on which the action is predicated,[2] "it clearly appears from the evidence, and we so conclude as a matter of law, that the awful and insistent noise given

the bottles and cans and other fixtures and artifacts of the plant. The boilers are fed in such a way, seemingly with oil of inferior quality, that great explosions have resulted arousing natural alarm and consequent uneasiness among the neighbors. Unusual noise also arises from the cleaning and sterilization of bottles and cans as well as from the handling of the latter when they are carried full of milk in an elevator from the ground floor to the top floor, where they are emptied in receptacles ad hoc and submitted to the process of pasteurization. The cans are made of steel and brass and each one weighs 115 pounds when filled. Unusual noise also arises from the trucks which deliver the pasteurized milk outside the plant to defendant's customers. One of these trucks is loaded at 4 a.m., as admitted by defendant in his testimony. The noise is so intense and persistent as to prevent normal conversation from being heard inside plaintiff's house and even in houses farther away. Two of plaintiff's witnesses described the noise as "terrible." In his testimony, the defendant admitted that the machine used to wash the cans makes "much noise," and that the compressor of the refrigeration equipment also makes noise. The evidence also shows that the boilers, one of which adjoins plaintiff's property, emit smoke and soot which are diffused all over plaintiff's house; that the odor of gas or oil, also given off by the boilers, is perceived inside the house; and that whenever defendant processes cheese from left-over milk, the odor is nauseating and unbearable. The evidence further shows that defendant's laborers and employees talk and argue in loud voices, occasionally using offensive and even obscene language; that the conversation of those employees penetrates plaintiff's house, during the day and nighttime, through openings or windows which defendant has opened on the wall of the plant building contiguous to plaintiff's house; that the glare from the lights of the refrigeration plant shines inside plaintiff's house at nighttime through the said openings and windows. As a result, the bedroom nearest defendant's plant was rendered useless and plaintiff was forced to abandon the use thereof. Plaintiff also testified, and defendant admitted, that defendant's trucks park occasionally in front of plaintiff's house obstructing the free ingress and egress of her automobile to and from the garage."

[2] Section 277 of the Code of Civil Procedure, 1933 ed., provides:

"Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

off by the equipment and accessories and the employees of defendant's pasteurization plant; the smoke and soot thrown off by the boilers; the fumes and bad odors given off by the fuel fed to the boilers and by the processing of cheese; the lights which shine through the openings or windows of the said plant building; the parking of vehicles in the entrance of plaintiff's garage; and other noises and annoyances described in the fourth and fifth findings of fact, are injurious to the health and offensive to the sensibilities of plaintiff, have interfered with the free and comfortable use of her property, and impaired her personal welfare, within the meaning and scope of the afore-cited legal provision."

The evidence introduced and believed by the lower court fully warrants the pronouncement made in the judgment, in the sense "that the manner in which defendant's plant for the pasteurization of milk and sale of that product...is operated, is a disturbance or nuisance which interferes with plaintiff's free enjoyment of her property...; that she has the right to have such nuisance abated and permanently removed," and that therefore there is no reason for reversing the judgment on the ground adduced. *Higgins* v. *Decorah Produce Co. et al.,* 242 N. W. 109 (Iowa); *Mitchel* v. *Flynn Dairy Co.,* 151 N. W. 434 (Iowa); *Kobielski* v. *Belle Isle East Side Creamery Co.,* 193 N. W. 214 (Mich.); *Danberman* v. *Grant,* 246 Pac. 319 (Cal.); *Judson* v. *Los Angeles Suburban Gas Co.,* 106 Pac. 581 (Cal.); *Stevens* v. *Rockport Granite Co.,* 104 N. E. 371 (Mass.). We have given careful consideration to defendant's arguments in support of his assignment of error allegedly committed by the lower court, and find that they are without merit.

 Defendant alleges that plaintiff's house is not located in a residential district, relying mainly on the fact that the market place of the city of Mayagüez is located there. The court expressed the view, as has been seen, that, notwithstanding this and the fact that several businesses have

been established in that district since 1939, "the vicinity is still predominantly residential." Assuming, however, that this were not so and that plaintiff's house were located in a business section, such circumstances would not authorize defendant to operate his plant and business in the manner in which he has been doing it, thereby seriously impairing the rights of the former. Although in determining whether or not a certain venture constitutes a nuisance, the vicinity in which it is located is a relevant factor; and, notwithstanding the fact that persons who reside in districts where commercial and industrial establishments are operated, which are engaged in activities necessary and convenient for the public welfare and social progress, must put up with the natural and incidental annoyances and inconveniences caused thereby, without any legal remedy to avoid it, such fact in nowise implies that they are devoid of all protection if such activities, by the manner in which they are conducted, exceed the bounds of reasonableness and, as a result, the right which they also have to the comfortable enjoyment of life or property is destroyed or impaired, imposing a burden greater than they ought to be required to bear, thereby upsetting the equilibrium or balance necessary to harmonize the parties' correlative rights. When the balance is upset "by an activity which exceeds the bounds of reasonableness and does substantial and disproportionate injury to the peaceful possession of others, such activity is said to be a nuisance." *American Law of Property*, Vol. VI–A, p. 65; *Quinn v. American Spiral Spring Mfg.*, 141 Atl. 855 (Pa.) ; *Higgins v. Decorah Produce Co. et al, supra; Danberman v. Grant, supra; Clinic & Hospital v. McConnell*, 236 S. W. 2d 384 (Mo.) ; *Euler v. Sullivan*, 23 Atl. 845 (Md.) ; *Devoke v. Yazoo & M.V.R. Co.*, 30 So. 2d 816 (La.) ; *Susquehanna Fertilizer Co. v. Spranglen*, 39 Atl. 270 (Md.) ; *Judson v. Los Angeles Suburban Gas Co., supra; Stevens v. Rockport Granite Co., supra*. The injury must be real and appreciable, because the law does not concern itself

with slight inconveniences and petty annoyances, or mere trifles. IV *Restatement of the Law, Torts*, 229. "Life in organized society, and especially in populous communities, involves an unavoidable clash of individual interests. Practically all human activities, unless carried on in a wilderness, interfere to some extent with others or involve some risk...," but "where the harm or risk to one is greater than he ought to be required to bear under the circumstances," IV *Restatement of the Law, Torts*, 231, liability is imposed upon the responsible party if it is shown that the other person's rights have been seriously impaired.

The findings of the lower court show beyond question that defendant's venture, legal in itself, has become a nuisance because of the way it is carried on, bearing in mind the right which plaintiff also has to the free and comfortable enjoyment of her property, thereby causing damages greater than she ought to be required to bear by reason of the vicinity where she resides.

In situations such as this, the decision of whether or not the use of his property is reasonable, bearing in mind the right of the other person to enjoy his, is always a fundamental question. The judicial decisions state with clarity the principle that there are no fixed rules or norms for making a determination, and that the solution of the problem necessarily depends on the factors present in each case, as for example, the locality, nature, usefulness, and value of the use involved in the controversy, and the extent and nature of the damage, the nature, usefulness, and social value of the damaged use. If we take all such factors at their face value, we reiterate that the defendant maintains a nuisance which impairs the rights of plaintiff; and this is so whether we consider the district where the former's business is located as predominantly residential, as decided by the trial court, or as a hybrid, commercial, and residential district, which is at the most the conclusion that can be reached, viewing the situation in the light most favorable to him.

■ The fact that the plant for the pasteurization and sale of milk is useful to the public, as contended, is a significant circumstance but in nowise controlling. In view of the facts which the court considered proved by the evidence, such circumstance does not warrant a continuation of the nuisance complained of by plaintiff. *Euler* v. *Sullivan*, *supra; Susquehanna Fertilizer Co.* v. *Malone*, 20 Atl. 900 (Md.); *Quinn* v. *American Spiral Spring Mfg. Co.*, *supra; Judson* v. *Los Angeles Suburban Gas Co.*, *supra*. Neither is it warranted by the $80,000 investment made in that venture. *Susquehanna Fertilizer Co.* v. *Spranglen*, *supra*.

■ Defendant's evident purpose is that we take into consideration, as an element adverse to the moving party, the fact that the latter is an "outstanding industrial business woman," owner of an "impressive modern structure" devoted to residence. The provisions of § 277 of the Code of Civil Procedure exist for the benefit of rich and poor, both of whom are equally entitled to the protection of the law. The circumstances mentioned by the defendant do not warrant the exclusion of plaintiff from the ambit and sphere of justice, compelling her to bear and tolerate, without any protection, the injury caused by the former in making exceptional and undue use of his plant and business. It would be tragic indeed if the right to the comfortable use and enjoyment of the property was made to depend on the economic situation of the parties. We know of no principle which may be invoked to sanction a nuisance because of the fact that the person bearing its injurious effects is well-to-do, or is wealthier than the responsible party. The law does not favor absurdity. The principles with which we are familiar, which are absolutely indispensable for living in a community and for the coexistence of mutual rights and interests, are those set forth in this opinion, summarized in the following doctrine, frequently and repeatedly sanctioned in judicial precedents: "The owner of a property has the right to devote it to any licit purpose which does not constitute a nuisance per

se, provided it is conducted in such a manner as not to cause unreasonable inconveniences to the neighbor in the reasonable enjoyment of his property. However, every business, no matter how licit, must be operated with due regard to the rights of others, and no one owns it for the purpose of creating and maintaining a nuisance to the prejudice of his neighbor, even in the operation of a legal business, or to conduct it . . . in a manner which is injurious and offensive to those residing in the vicinity."

It is admitted that plaintiff "has the right to the comfortable enjoyment of life, as provided in the statute"—the defendant undoubtedly refers to § 277, *supra*—but he next argues "that the spirit underlying that legal precept has been repealed by the reality in which this country is living." The "reality" is that our legislation grants that right, which defendant acknowledges to the moving party on the one hand and denies it on the other, and that it affords remedies to prevent its unlawful injury or infringement, without which such right would have no practical value. The principle consecrated in the provisions of that section, by its nature and purpose, cannot be obsolete, as erroneously contended, and it certainly is not hostile to industrial progress and development.

It is contended in the second assignment that it was error not to give credit to the defense of laches, one of the defenses adduced in the answer.

In the findings of fact the court found as proved that, "upon expiration of the lease contract with the National Guard, plaintiff reoccupied her house early in 1945 and began to notice the noises coming from defendant's business," and that plaintiff," who is a friend of the defendant and his family, spoke to him about them and he promised to abate them through improvements in the business and change in the hours for commencing and terminating his activities. As stated above, the defendant did improve and enlarge greatly his establishment. He converted it from a small milk stand

into a modern pasteurization plant. However, the noise and annoyances instead of being abated, were augmented on a progressive scale... notwithstanding plaintiff's constant demands to the defendant, during the period from 1945 to the date of the trial, that he kept his oft-repeated and never-fulfilled promises to operate the plant in such a way as not to injure plaintiff. What at the beginning was a petty nuisance in the early hours, became later an unbearable situation which deprived plaintiff of the comfortable use and enjoyment of her property. The smoke, the conversations, and the noxious odors made life in the house, even during the daytime, impossible. Her mother became very ill. Finally, plaintiff suffered a nervous breakdown which developed into a neurodermatitis which necessitated medical attention...in 1950. Plaintiff spoke to the defendant for the last time in May of that year," and "he said there was nothing he could do and to take the matter to court." In June of that year she moved out of the house on account of the nuisance. (Finding 5.) The action was brought in October 1950.

The question of laches raised by the defendant was to be determined by the sound discretion of the trial court. *Brown* v. *County of Buena Vista*, 95 U. S. 157; *Laursen* v. *O'Brien*, 90 F. 2d 792. There was no abuse of discretion in concluding that it was without merit. In view of the findings, it would have been manifestly unfair to recognize any. Furthermore, since the action sought to abate a nuisance continuing and gradual in character, the defense is not a good one. *Coll* v. *Biascoechea*, 52 P.R.R. 729; *E. W. Face & Son* v. *Cherry et al.*, 84 S. E. 10 (Va.); *Smith* v. *City of Jefferson et al.*, 142 N. W. 220 (Iowa).

Defendant contends in the third assignment that the court erred in overruling the defense of estoppel. This was bound to fail for the same reasons which justified the overruling of the defense of laches.

It is contended in the fourth assignment that it was error "not to apply the rule of prescription..."

After plaintiff presented her evidence, the defendant amended the answer, adding the following defense: "That this action, as respects the claim for damages, has prescribed by the lapse of one year counted as of April 1945." The lower court overruled it, stating in the conclusions of law: "The question has been expressly decided in this jurisdiction adversely to the defendant," citing our decision in *Capella* v. *Carreras*, 57 P.R.R. 250. That case was an action to abate a nuisance and for damages. The question of prescription was pleaded. We held that it could not be invoked "*since there are involved damages caused by continuous acts which subsist until the cause producing them has ceased.* It may well be said that in such a case the injurious act is renewed from day to day, from hour to hour, from minute to minute, and from second to second." In that case we denied a motion for reconsideration, in which it was alleged that "as what is involved is an action to abate a nuisance and for damages, based on section 1803 of the Revised Civil Code, the plaintiffs could only recover such damages as they suffered within the year next preceding the filing of the complaint, in accordance with subdivision 2, section 1869 of the said code," and we said: "Here the damages claimed arose not only from the construction of the fence which blocked the street, but also from the maintenance of the fence, which practically ruined the property of plaintiffs. *As we have already said, there is involved a continuing nuisance.*" (Italics ours.)

In *Colls* v. *Municipality of Lares*, 23 P.R.R. 805, we held, quoting from the headnote, that "Under sections 1869 and 1803 of the Revised Civil Code an action against a municipality for damages arising from the construction of an alleged nuisance, consisting of a sewer, retaining wall and embankment built in order to open and grade a street, prescribes in one year in the absence of proof of damages resulting from the *continuing nuisance.*" (Italics ours.)

Defendant's contention is that the principle announced in *Capella* v. *Carreras, supra,* in overruling the defense of

prescription, applies in the case of a claim for damages to property but not in the recovery of personal damages, stating that, as respects the latter, plaintiff "could claim personal damages sustained from October 18, 1949, and thereafter, namely, during the year preceding the filing of the complaint." We disagree. That principle does not rest on the intrinsic nature of the damage produced by the nuisance, but on the continuing and gradual character of the cause which originates it, which renews continually the wrongful act. The nuisance in the case at bar is of that nature.

We are fully aware that the judicial decisions bearing on the question raised in the assignment are at variance, but we have subscribed to the doctrine announced in *Capella* v. *Carreras, supra,* which is indorsed by respectworthy precedents. *Werger* v. *St. Louis & N.O.R. Co.,* 35 La. Ann. 645; *Di Carlo* v. *Laundry & Dry Cleaning Service,* 152 So. 327 (La.); *McCoy* v. *Arkansas Natural Gas Co.,* 165 So. 632 (La.); *Devoke* v. *Yazoo & M. V. R. Co., supra; Rowe* v. *Gatke Corporation,* 126 F. 2d 61. Unless it is shown that that doctrine is erroneous, there is no reason to repudiate it, and it has not been shown that it is.

In view of our conclusion on the fourth assignment, we need not consider the error alleged in the fifth assignment as committed by the trial court, in awarding the sum of $2,500 for damages.

Appellant is wrong in maintaining, as he does in the sixth assignment, that he should not have been ordered to pay attorney's fees.

■■■ In the seventh and last assignment he assails the denial of the motion for reconsideration. In the judgment, as already stated, it was held that plaintiff had a right to have the nuisance abated and removed, and to that end the defendant was ordered to cease all activities in his pasteurization plant and milk business "at 6 p.m. every day of the week, and not to resume them until 6 a.m. of the following morning," and to perform the construction and adopt the

measures which follow: (a) to wall up "hermetically all portholes, openings, and windows on the wall of the plant building adjoining plaintiff's property"; (b) to reinforce "with insulating material the inside of the wall as well as the ceiling of the upper story of the building so as to eliminate or abate the noise from the plant machinery and equipment which penetrates through the wall and ceiling"; (c) "to feed the boilers with appropriate fuel, of recognized quality, so as to avoid explosions, excessive smoke, and noxious odors"; (d) to raise the smoke stacks of the boilers "in such a way that the smoke will not be diffused over plaintiff's house and neighboring houses"; (e) to provide the smoke stacks "with adequate caps which will collect the soot and prevent the same from being diffused over plaintiff's property and those of the neighbors"; (f) to prevent the loud conversation and use of offensive language by his employees; (g) to divide "by partition walls the upper story of the plant building into two or three sections or departments so as to isolate some of the machinery and equipment of the pasteurization plant and cut down the noise produced by it"; (h) to move "the door and stairway leading to the upper story of the pasteurization premises adjoining plaintiff's property," situating them "toward the interior wall of the plant building." Defendant was forbidden to park or permit the parking "of his commercial vehicles in front of the entrance to the garage of plaintiff's property thereby obstructing the free access to it."

Defendant contended that the measures ordered to be taken for the purpose of abating the nuisance were impracticable, oppressive, and onerous, praying for leave to produce evidence to prove it. He adduced several grounds in support of that assertion. We will refer briefly to some of them.

Objection was raised to the order prohibiting all industrial or business activities after 6 p.m., on the ground that it included "all kinds of transactions, such as simple operations involving the sale of milk which are carried on without

producing noise and which are essential within the social life of a community for the feeding of children and/or sick persons," and "because the motors of the refrigeration compressors are especially constructed so that they will work continuously, and if the defendant is forced to turn the motors off at 6 p.m. the refrigerators will be rendered useless and the milk stored therein will spoil rapidly and will be unfit for human consumption." As further grounds to contest that part of the judgment, defendant contends that the dairy business "is subject to hazards which daily affect its normal operation" and, if they do occur, "would render impossible the completion of the pasteurization process before 6 p.m., or in extreme cases, the commencement before that hour."

Regarding the works to be constructed in the pasteurization plant, defendant's contention is that they could not be carried out "without the advice or intervention of the Department of Health officers and the plans required to be submitted to the Plannning Board and the Permit Board, which in no case could be done within the period of 30 days" fixed in the judgment for compliance therewith. He maintains that the measures regarding the smoke stacks were unnecessary, and that the other works could not be carried out.

After making the exception that he was not waiving "any right which he may have to assert against the judgment," and "only for the purpose of imparting justice in the instant case," the defendant urged that the judgment be amended as follows: "Striking out the prohibition to transact mercantile operations in defendant's plant between 6 p.m. and 6 a.m."; "Extending the period for carrying on industrial operations until 9 p.m."; "In lieu of the alterations required to be made within the plant premises . . ., to permit . . . the construction of a wall of a height to be determined by the court and provided with insulating material," in order to prevent "the alleged noise coming from defend-

ant's property to penetrate plaintiff's." He alleged that the milk will not reach the consumers in time if the loading of the delivery trucks is not started until 6 a.m.

The lower court denied reconsideration refusing to grant the leave requested by defendant to introduce the evidence. It made clear, however, that the judgment did not bar "the adoption of measures for the conservation of the product and cleaning of the plant during the hours in which it is forbidden to engage in any industrial and/or commercial activity ...," indicating that "among the measures for the conservation of the product is clearly included the operation of the cold storage and refrigerators for the preservation of the milk before or after it is pasteurized." Regarding other measures comprised in the judgment, it indicated that "they are the minimum measures that the defendant is required to fulfill and observe according to the evidence submitted." Referring to the argument that the works could not be carried out without the approval of third parties or entities, it decided correctly that that circumstance should not prejudice plaintiff's right, citing the decision in *Kobielski* v. *Belle Isle West Side Creamery Co., supra;* and, regarding the period to effectuate them, it decided that, on motion of the defendant and previous justification of the need, "a reasonable period of time would be granted to effectuate the works which cannot be performed during the thirty-day period fixed in the judgment."

In the findings of fact the court stated that "the evidence shows beyond any doubt that defendant's business —pasteurization and sale of milk— can be operated and exploited only in the hours of the day, namely, between 6 a.m. and 6 p.m., without impairment or prejudice thereto. The noise and other annoyances to plaintiff and other neighbors in the use and enjoyment of their respective homes would thus be abated. Defendant himself admitted in his statement that with the equipment he now has the pasteurization work can be performed between 12 noon and 6 p.m., that is, during

the afternoon hours. We see no reason why all the work involving the delivery and sale of the product cannot be accomplished during those hours and the morning hours. The evidence also shows beyond doubt that some of the noise and other deficiencies pointed out may be eliminated and some abated during the daytime, namely, during the operation of the pasteurization plant and activities producing them," and the court proceeded to enumerate the steps to be taken by defendant in order to accomplish it.

Our action would be arbitrary if we were to disturb, without any basis or justification, the conclusion of the trier respecting the measures to be taken and works to be performed, for the purpose of remedying the wrong rightly complained of by the moving party. To hold that it made undue use of its discretion in denying reconsideration, thereby upholding the pronouncements in the judgment, would also be arbitrary.

While defendant-appellant, feeling aggrieved by the judgment, maintains that the same should be reversed or modified in its entirety, plaintiff-appellant contends in the first of the three assignments on which her appeal is grounded that the court erred "in concluding that in view of the findings, an order entirely suppressing and eliminating defendant's pasteurization business and other subsidiaries, did not lie . . ." That court held that it was not a question of a nuisance per se, and that the nuisance exists because of the manner in which defendant's industrial and commercial activities are conducted, and that plaintiff has a right to demand that the nuisance "cease and be removed permanently" by the means set forth in the judgment, which in the opinion of the court will eliminate in part and abate in any event the disturbances, annoyances, and inconveniences which defendant is causing to plaintiff. Plaintiff believes that it is absurd, on the one hand, to recognize her right to demand the abatement and removal of such nuisance, and, on the other hand, to hold "that the pasteurization

and sale of milk ... does not constitute a nuisance ... per se," and that the total elimination thereof does not lie. She contends that "the industrial and commercial activities which, pursuant to the said order (judgment), defendant could carry on during the daytime on the lot adjoining plaintiff's residence, are of such nature that they will inevitably and necessarily produce noise, inconveniences, and annoyances to such an extent and persistency as to interfere with the free and comfortable use of her property," and "would injure her personal well-being and health."

We find no inconsistency in the holding that appellant has the right to demand the abatement of the nuisance, and yet that the absolute termination of the venture is not in order. We believe the court's action was wise and correct, thereby applying and recognizing juridical rules and norms which have been and are sanctioned by a great majority of judicial precedents, refusing to adopt a drastic measure wholly eliminating a venture licit by itself, both by its nature and by its situs, granting, however, to the plaintiff adequate relief to put an end to the nuisance by the suppression of its causes.

In holding that plaintiff has the right to have the nuisance abated, rendering judgment with the pronouncements necessary to achieve it, the court did in fact decide that, once the measures are taken and the works performed, such objective will have been achieved, and that the disturbances, inconveniences, and annoyances which plaintiff may have to accept will not arise from a nuisance, within the judicial meaning of the term, but from the normal use of the property, which she is compelled to tolerate. Prosser *on Torts*, p. 582. In other words, the ruling is grounded on the principle that in a situation like the one in the case at bar, taking all present and relevant factors for their worth, neither party may deprive the other of the normal use of its property, both being under the duty to make concessions in order

802

to attain a happy medium which will permit reconciliation of their interests.

 In the second assignment plaintiff complains that no compensation was awarded for the damages caused "to her real or patrimonial rights" as a result of the nuisance. In the first place, she maintains that defendant should have been ordered to compensate her for the depreciation in the market value of the house. The lower court refused to award compensation on that account on the ground that "the nuisance is of a temporary character and will be abated." In the estimation of the court, the value of the house was reduced by 25 percent, while plaintiff maintains that it is 30 per cent. The latter contends that if defendant were wholly forbidden to carry on his business of pasteurization and sale of milk, the house "will not have sustained any *permanent damage*, since it will recover its market value depreciated" by reason thereof as soon as the nuisance is abated, while if the nuisance is not completely abated —as has been seen, her opinion is that this will not be accomplished by the pronouncements in the judgment— "and the defendant is allowed to continue to cause the nuisance (even during the daytime), then the market value would suffer irreparable depreciation," in which case she has a right to recover compensation for that account, namely, damages of a permanent character.

In view of the fact that the nuisance is created by the manner in which the activities of defendant's venture are carried on, and that such nuisance will be removed upon compliance with the judgment, appellant's house, in that event, will recover its value, *Kentucky West Virgina Gas Co.* v. *Lafferty*, 174 F. 2d 848, except perhaps the diminution by reason of the proximity of the plant and activities which will continue to be carried on therein, but appellant cannot nor will she be able to complain of such consequence for the aforesaid reason. Recoverable depreciation is not compensable, for it is evident that that is a temporary and not an

irreparable damage, as erroneously contended. The damage being temporary, the court acted correctly in not awarding compensation for depreciation in the market value. *Kentucky West Virginia Gas Co.* v. *Lafferty, supra;* 15 Am. Jur., p. 519; *City of Murfreesboro* v. *Haynes,* 82 S. W. 2d 236 (Tenn.); *Bollinger* v. *American Asphalt Roof Corporation,* 19 S. W. 2d 544 (Mo.); *City of Richmond* v. *Gentry,* 124 S. W. 337 (Ky); *Theisen* v. *Pittmans & Dean Co.,* 162 N. W. 76 (Mich.).

Plaintiff further contends that if the nuisance were completely removed by entirely eliminating the business, she would be entitled to compensation, *first,* for the damages sustained up to the date of the trial; *second,* for damages to the property consisting in the depreciation in value of the use of her residence, estimated on the basis of diminution of the rental value; and, *third,* for such damages and for damages to her person, namely, annoyances, inconveniences, physical suffering, etc., both separately and independently estimated.

We will discuss the question raised assuming that the nuisance will be, abated and that the damages are temporary.

Plaintiff presented evidence, which was not controverted by the defendant, tending to prove that the nuisance persisted after the complaint was filed and existed at the time of the trial, and also on the damages suffered by her from the inception of the nuisance until such date. After offering her evidence, she requested leave to amend the complaint for the purpose of conforming the pleadings to the evidence, so as to include in the claim the damages occasioned up to the time of the trial. The defendant objected and the court stated that it would decide in its "conclusions" whether or not compensation shoud be awarded "for the damages sustained after the complaint was filed..."

In view of the fact that evidence was introduced on those particulars, without objection on the part of the defendant, as already stated, the pleadings of the complaint were on

that account conformed to the evidence, it being unnecessary to obtain authorization. Rule 15(*b*) of the Rules of Civil Procedure,[3] 3 Moore's *Federal Practice*, 1948 ed., pp. 847, 848; *Lientz* v. *Wheeler*, 113 F. 2d 767. However, the conclusions of the court show, and this is our interpretation, that in deciding the case it considered as raised the question bearing on the amount of the compensation and decided the same favorably to the plaintiff, awarding compensation for damages up to the time of the trial.

In a case such as this, involving temporary damages, the majority rule permits recovery up to the commencement of the action —*Development in the Law*— *Damages*—, 61 Harv. L. Rev. 123; *Aldworth* v. *Lynn*, 26 N. E. 229 (Mass.); *Wharton* v. *Empire Mfg. Co.*, 146 S. E. 867 (N.C.)— however, we prefer the minority rule which allows recovery up to the time of the trial so as to reduce the volume of litigation, if the wrong is a continuing one so that the subsequent wrongs are similar to those on which the original claim was founded. *Development in the Law, supra*, p. 123; *Schrank* v. *Andres*, 22 N. W. 2d 548 (Minn.); *Kerr & Elliot* v. *Green Mountain Mut. Fire Ins. Co.*, 18 A. 2d 164 (Vt.); *City of Harrisonville, Mo.* v. *W. S. Dickey Clary Mfg. Co.*, 61 F. 2d 210; Joyce on Damages, Vol. III, p. 2199.

As a general rule, where the injury to real property caused by a nuisance is of a permanent character, compensatation is awarded for depreciation in the market value of the property, and where it is of a temporary character, for the diminution in the usable or rental value and such other special damages as may be proved. Generally, the diminution in the usable value is determined on the basis of the diminution in the rental value, although not blindly. In the case at bar, it was held that plaintiff had no right to

---

[3] Rule 15 provides in subd. (*b*), in part, that "when issues not raised by the pleadings are tried by express or implied consent of the parties or by order of the court, they shall be treated in all respects as if they had been raised in the pleadings."

recover from defendant "the loss or depreciation in the rental value ... of her property, for the same was neither rented, nor in the rental market since 1945 ...," and we find no error in that conclusion. 39 Am. Jur. p. 397; *Norwood* v. *Sheen*, 186, N.E. 102(Ohio); *Toebbe* v. *City of Covington*, 141 S. W. 421 (Ky.); *Louisville H. & St. L. Ry. Co.* v. *Roberts*, 139 S. W. 1073 (Ky.). Irrespective of the aforesaid reason for discarding it, we are convinced that plaintiff's evidence did not make it compulsory to adopt, as basis for determining the compensation, the loss or decrease in the rental value.

 In support of the contention that no compensation was awarded for the loss in the usable value and that she should have been compensated on that account and for personal damages, plaintiff-appellant argues that the action of the lower court is untenable since it stated that the sum of $2,500 awarded as compensation for personal damages sustained by plaintiff also included depreciation in the usable value. This contention is predicated on the assertion previously made by that court to the effect that "the findings in this case support only personal damages, properly speaking, to plaintiff and no damages to her property." If we would consider separately the foregoing pronouncement contained in conclusion 2 of its conclusions of law, perhaps plaintiff might be right. However, it clearly appears from the facts, according to the findings of the court, that as a result of the nuisance "the bedroom nearest defendant's plan was rendered useless and plaintiff was forced to abandon the use thereof"; "defendant's trucks park occasionally in front of plaintiff's house obstructing the free ingress and egress of her automobile to and from the garage" —conclusion No. 4; also, that by reason of the nuisance maintained by defendant, "in June 1950 plaintiff moved to another house owned by her in Cerro de las Mesas, near Mayagüez, where she is residing at present" —conclusion No. 5. As part of the latter conclusion, the court stated as follows: "Plaintiff

has suffered serious physical disturbances and inconveniences and great mental anguish by the uncomfortable manner in which she was compelled to use and enjoy her house up to June 1950, by reason of the noise, smoke, fumes, and other disturbances produced by the manner in which defendant operates and exploits his business; the consequent loss of tranquility, sleep, and health; and by the natural preoccupation and inconveniences she has endured by being deprived —or— compelled to bear, by the circumstances of occupying and using of her property."

In view of the foregoing, it is evident that the lower court, in stating in the second of its conclusions of law that the evidence supported only personal damages, properly speaking, "and not damages to her property," expressed, not a limitation to the extent of the damages sustained by plaintiff in relation to the loss of the use of her residence, but denied wrongful consequences of a physical nature, according to the findings, to plaintiff's property.[4] This view is corroborated by a mere examination of that portion of the latter findings whereby the court determines plaintiff's right to recover, imposing liability on the defendant "for personal impairment, annoyances, discomforts, mental anguish, physical suffering and illness sustained by the said plaintiff, as recited in finding of fact No. 5," "as well as for inconveniences and mental anguish suffered by the said plaintiff resulting from the privation of the use of her property," awarding compensation "for all damages thus sustained" in the sum of $2,500, and declaring, immediately after pointing out briefly what in its judgment constitutes a confusion in the authorities as to whether the damages for depreciation of the usable value should be measured separately from direct personal damages, that "The amount awarded as compensation which defendant must pay to plaintiff includes, therefore, depreciation in value of use of her property as

---

[4] Plaintiff did not seek to recover material damages to property, nor for expenses incurred in moving to her house in Cerro de las Mesas.

well as compensation for annoyances, discomforts, physical and moral anguish, and suffering sustained by her. Truly, it would be difficult, if not impossible, to measure both damages separately.[5]

In view of the foregoing, we cannot agree with appellant as to the meaning or scope given to the statement of the trial court, in the sense that "the findings . . . support only personal damages, properly speaking, to plaintiff and not damages to her property." The reality is that, although the court did not adjudicate, out of the compensation awarded, separate amounts for both damages, such damages were in fact compensated, and appellant does not convince us that she suffered any injury by reason of the former.

She complains in the last assignment that she was not duly compensated for personal damages. The determination of the necessary and just amount to compensate plaintiff in a case such as the one at bar, must rest with the sound judgment, experience, and discretion of the trial court. It has not been shown that the amount awarded to appellant as compensation for all damages sustained by reason of the nuisance, including those indirectly arising from her mother's illness, was erroneous. Plaintiff had no right to compensation for direct personal injury to her mother. *United States Smelting Co.* v. *Sisan*, 191 Fed. 293; *City of Altus* v. *Tinsley*, 95 P. 2d 635 (Okl.). Apparently, the trial court attached no importance to the alleged anguish and suffering inflicted upon the adopted child, for it did not mention him specifically in finding No. 5. Considering the evidence which that court had under consideration, the failure to do so does not warrant reversal of the judgment.

The judgment appealed from will be affirmed.

---

[5] It is unnecessary, in our judgment, to consider in the case at bar the reasons which produce the confusion noted by the trial court on a question on which there is irreconcilable conflict in the judicial precedents.